**Katia V. POPOV; Peter Popov, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 99–70749.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 2001

Filed April 17, 2001

Peter Popov, Beverly Hills, California, for the petitioners-appellants.

Janet A. Bradley, Tax Division, Department of Justice, Washington, D.C., for the respondent-appellee.

Before: BROWNING, BRUNETTI, and HAWKINS, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

This case concerns the continuing problem of the home office deduction. We conclude, on the facts of this case, that a professional musician is entitled to deduct the expenses from the portion of her home used exclusively for musical practice.

### *Facts and Procedural Background* [1]

Katia Popov is a professional violinist who performs regularly with the Los Angeles Chamber Orchestra and the Long Beach Symphony. She also contracts with various studios to record music for the motion picture industry. In 1993, she worked for twenty-four such contractors and recorded in thirty-eight different locations. These recording sessions required that Popov be able to read scores quickly. The musicians did not receive the sheet music in advance of the recording sessions; instead, they were presented with their parts when they arrived at the studio, and recording would begin shortly thereafter. None of Popov's twenty-six employers provided her with a place to practice.

Popov lived with her husband Peter, an attorney, and their four-year-old daughter Irina, in a one-bedroom apartment in Los Angeles, California. The apartment's living room served as Popov's home office. The only furniture in the living room consisted of shelves with recording equipment, a small table, a bureau for storing sheet music, and a chair. Popov used this area to practice the violin and to make recordings, which she used for practice purposes and as demonstration tapes for orchestras. No one slept in the living room, and the Popovs' daughter was not allowed to play there. Popov spent four to five hours a day practicing in the living room.

In their 1993 tax returns, the Popovs claimed a home office deduction for the living room and deducted forty percent of their annual rent and twenty percent of their annual electricity bill. The Internal Revenue Service ("the Service") disallowed

---

1. The Service does not dispute the Tax Court's factual findings, from which we draw our factual summary.

these deductions, and the Popovs filed a petition for redetermination in the Tax Court.

The Tax Court concluded that the Popovs were not entitled to a home office deduction. Although "practicing at home was a very important component to [Popov's] success as a musician," the court found that her living room was not her "principal place of business." In the court's view, her principal places of business were the studios and concert halls where she recorded and performed, because it was her performances in these places that earned her income.

The Popovs filed this timely appeal.[2] We have jurisdiction under 26 U.S.C. § 7482.

### Analysis

The Internal Revenue Code allows a deduction for a home office that is exclusively used as "the principal place of business for any trade or business of the taxpayer." 26 U.S.C. § 280A(c)(1)(A). The Code does not define the phrase "principal place of business."

### A. The Soliman Tests

Our inquiry is governed by *Commissioner v. Soliman*, 506 U.S. 168, 113 S.Ct. 701, 121 L.Ed.2d 634 (1993), the Supreme Court's most recent treatment of the home office deduction. In *Soliman*, the taxpayer was an anesthesiologist who spent thirty to thirty-five hours per week with patients at three different hospitals. None of the hospitals provided Soliman with an office, so he used a spare bedroom for contacting patients and surgeons, maintaining billing records and patient logs, preparing for treatments, and reading medical journals.

The Supreme Court denied Soliman a deduction for his home office, holding that the "statute does not allow for a deduction whenever a home office may be characterized as legitimate." *Id.* at 174, 113 S.Ct. 701. Instead, courts must determine whether the home office is the taxpayer's principal place of business. Although the Court could not "develop an objective formula that yields a clear answer in every case," the Court stressed two primary considerations: "the relative importance of the activities performed at each business location and the time spent at each place." *Id.* at 174–75, 113 S.Ct. 701. We address each in turn.

#### 1. Relative Importance

The importance of daily practice to Popov's profession cannot be denied. Regular practice is essential to playing a musical instrument at a high level of ability, and it is this level of commitment that distinguishes the professional from the amateur.[3] Without daily practice, Popov would be unable to perform in professional orchestras. She would also be unequipped for the peculiar demands of studio recording: The ability to read and perform scores on sight requires an acute musical intelligence that must be constantly developed and honed. In short, Popov's four to five hours of daily practice lay at the very heart of her career as a professional violinist.

---

**2.** The Popovs also challenge the Tax Court's denial of their deductions for long-distance phone calls, meal expenses, and clothing. We find no merit in these claims. The Popovs did not adequately establish the business purpose of the phone calls or the meal expenses. *See Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933). The Tax Court did not err in finding that most of Katia

Popov's concert attire was adaptable to general usage as ordinary clothing. *See Pevsner v. Comm'r*, 628 F.2d 467, 469 (5th Cir.1980).

**3.** One who doubts this might consult George Bernard Shaw's famous observation that "hell is full of musical amateurs." George Bernard Shaw, *Man and Superman* act 3 (1903).

Of course, the concert halls and recording studios are also important to Popov's profession. Without them, she would have no place in which to perform. Audiences and motion picture companies are unlikely to flock to her one-bedroom apartment. In *Soliman,* the Supreme Court stated that, although "no one test is determinative in every case," "the point where goods and services are delivered must be given great weight in determining the place where the most important functions are performed." *Id.* at 175, 113 S.Ct. 701. The Service places great weight on this statement, contending that Popov's performances should be analogized to the "service" of delivering anesthesia that was at issue in *Soliman;* these "services" are delivered in concert halls and studios, not in her apartment.

We agree with Popov that musical performance is not so easily captured under a "goods and services" rubric. The German poet Heinrich Heine observed that music stands "halfway between thought and phenomenon, between spirit and matter, a sort of nebulous mediator, like and unlike each of the things it mediates—spirit that requires manifestation in time, and matter that can do without space."[4] Heinrich Heine, *Letters on the French Stage* (1837), quoted in *Words about Music: A Treasury of Writings* 2 (John Amis & Michael Rose eds., 1989). Or as Harry Ellis Dickson of the Boston Symphony Orchestra explained more concretely:

A musician's life is different from that of most people. We don't go to an office every day, or to a factory, or to a bank. We go to an empty hall. We don't deal in anything tangible, nor do we produce anything except sounds. We saw away, or blow, or pound for a few hours and then we go home. It is a strange way to make a living!

Harry Ellis Dickson, *Gentlemen, More Dolce Please* (1969), quoted in *Drucker v. Comm'r,* 715 F.2d 67, 68–69 (2d Cir.1983).

It is possible, of course, to wrench musical performance into a "delivery of services" framework, but we see little value in such a wooden and unblinking application of the tax laws. *Soliman* itself recognized that in this area of law "variations are inevitable in case-by-case determinations." 506 U.S. at 175, 113 S.Ct. 701. We believe this to be such a case. We simply do not find the "delivery of services" framework to be helpful in analyzing this particular problem. Taken to extremes, the Service's argument would seem to generate odd results in a variety of other areas as well. We doubt, for example, that an appellate advocate's primary place of business is the podium from which he delivers his oral argument, or that a professor's primary place of business is the classroom, rather than the office in which he prepares his lectures.

We therefore conclude that the "relative importance" test yields no definitive answer in this case, and we accordingly turn to the second prong of the *Soliman* inquiry.

### 2. *Amount of Time*

Under *Soliman,* "the decisionmaker should ... compare the amount of time spent at home with the time spent at other places where business activities occur." *Id.* at 177, 113 S.Ct. 701. "This factor assumes particular significance when," as in this case, "comparison of the importance of the functions performed at various places yields no definitive answer to the principal place of business inquiry." *Id.*[5]

---

4. Although not, perhaps, without practice space.

5. Justices Thomas and Scalia concurred in *Soliman,* but noted that the Court provided no guidance if the taxpayer "spent 30 to 35

In *Soliman*, the taxpayer spent significantly more time in the hospitals than he did in his home office. In this case, Popov spent significantly more time practicing the violin at home than she did performing or recording.[6]

This second factor tips the balance in the Popovs' favor. They are accordingly entitled to a home office deduction for Katia Popov's practice space, because it was exclusively used as her principal place of business.

## B. *Drucker*

The result we reach in this case harmonizes with that of the Second Circuit in *Drucker v. Comm'r*, 715 F.2d 67 (2d Cir. 1983). *Drucker* involved concert musicians employed by the Metropolitan Opera Association, which did not provide its musicians with practice facilities. Each musician instead devoted a portion of his or her apartment exclusively to musical study and practice, and spent approximately thirty hours a week practicing. *Id.* at 68. The musicians sought to deduct a portion of the rent and electricity allocable to the practice area. The Service denied the deduction. The Tax Court agreed with the Service, holding that off-premises practice was not a requirement of the musicians' jobs and that the musicians' principal place of business was Lincoln Center.

The Second Circuit reversed. The court first rejected as clearly erroneous the Tax Court's conclusion that practice was not a "requirement or condition of employment." *Id.* at 69. The court then concluded that the musicians' principal place of business was their home practice studios, finding that this was "the rare situation in which an employee's principal place of business is not that of his employer." *Id.* Both "in time and in importance, home practice was the 'focal point' of the appellant musicians' employment-related activities." *Id.* Accordingly, the musicians were entitled to a deduction for home office expenses. The facts in this case are even more compelling. In *Drucker*, the musicians had only one employer; here Popov worked for twenty-six different employers and recorded in thirty-eight different locations.

We are unpersuaded by the Service's contention that *Drucker* is no longer good law. The Service has not directed us to any decision that has ever called *Drucker* into question. The Supreme Court cited *Drucker* twice in *Soliman*, but never suggested that it was overruling *Drucker*'s result. *Soliman*, 506 U.S. at 171, 172, 113 S.Ct. 701. Although the particular "focal point test" employed by the Second Circuit may no longer be valid, we are unwilling to conclude that the Supreme Court sub silentio overruled a long-standing precedent

hours at his home office and only 10 hours" at the hospitals. 506 U.S. at 184, 113 S.Ct. 701 (Thomas, J., concurring) "Which factor would take precedence? The importance of the activities undertaken at home . . . ? The number of hours spent at each location? I am at a loss, and I am afraid the taxpayer, his attorney, and a lower court would be as well." *Id.*

**6.** The Service argues that the evidence is unclear as to "how much time Mrs. Popov spent practicing at home as opposed to the time she spent performing outside of the home." It is true that the evidence is not perfectly clear and that the Tax Court made no specific com-

parative findings. However, the Tax Court found that she practiced four to five hours a day in her apartment. If we read this finding in the light most generous to the Service and assume that she only practiced four hours a day 300 days a year, Popov would still have practiced 1200 hours in a year. She testified that she performed with two orchestras for a total of 120–140 hours. If she spent a similar amount of time recording, she would still be spending about five hours practicing for every hour of performance or recording. The only plausible reading of the evidence is that Popov spent substantially more time practicing than she did performing or recording.

of the Second Circuit. "Uniformity of decision among the circuits is vitally important on issues concerning the administration of tax laws. Thus the tax decisions of other circuits should be followed unless they are demonstrably erroneous or there appear cogent reasons for rejecting them." *Unger v. Comm'r,* 936 F.2d 1316, 1320 (D.C.Cir.1991) (quoting *Keasler v. United States,* 766 F.2d 1227, 1233 (8th Cir.1985)).

## C. *Conclusion*

For the foregoing reasons, the Tax Court's denial of the Popovs' home office deduction is reversed.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.** Costs on appeal to petitioners.