IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

LESLIE D. MARCUM,                        )
                                         )
                Plaintiff,               )      TC-MD 150414N
                                         )
         v.                              )
                                         )
DEPARTMENT OF REVENUE,                   )
State of Oregon,                         )
                                         )
                Defendant.               )      **FINAL DECISION**

This Final Decision incorporates without change the court's Decision, entered April 4, 2016. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* TCR-MD 16 C(1).

Plaintiff appeals Defendant's Notice of Deficiency Assessment dated July 28, 2015, for the 2011 tax year. A trial was held in the Oregon Tax Courtroom on January 12, 2016, in Salem, Oregon. Vern Holstad (Holstad), CPA, appeared and testified on behalf of Plaintiff. Plaintiff testified on his own behalf. Colin Currier (Currier), Tax Auditor, appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1 through 8 and Defendant's Exhibits A through I were received without objection

I. STATEMENT OF FACTS

Plaintiff worked as a timber faller for Fallon Logging Co., Inc., in 2011. (*See* Ptf's Ex 1 at 1; Ex 4; Ex 5 at 1.) Plaintiff testified that he would receive a job assignment from his employer and continue working at that job site until told otherwise. He testified that he drove his pickup truck to the job sites. Plaintiff testified that his tools were in his truck and ready to go.

/ / /

/ / /

A.    *Mileage*

Plaintiff testified that he prepared a mileage calculation listing his job sites in 2011. (*See* Ptf's Ex 6 at 1-2.)  He testified that he kept that record periodically.  The mileage calculation lists four job sites in 2011, the number of days driven to each job site, and the round trip miles per day.  (*See id.*)  Based on Plaintiff's log, he worked the "Buck MTN" job from January through April 2011, for which he drove 90 miles per day for 85 days.  (*Id.*)  Plaintiff worked the "Cockran" job from May to July 2011, for which he drove 112 miles per day for 64 days.  (*Id.*)  Plaintiff worked the "Hug PT." job from August through October 2011, for which he drove 100 miles per day for 65 days.  (*Id.*)  Plaintiff worked the "Vermilya" job in November and December 2011, for which he drove 31 miles per day for 32 days.  (*Id.*)   Plaintiff calculated his 2011 business mileage to be 22,300 miles.  (*Id.*)  Holstad testified that Plaintiff's pickup truck was used 100 percent for business.  Plaintiff testified that his personal vehicle was a Chevrolet. Holstad testified that Plaintiff's odometer readings also support Plaintiff's calculation that he drove 22,300 business miles in 2011.  (*See id.* at 3.)

Plaintiff testified that he was required to go to his employer's shop to fill his fuel.  He provided a letter from his employer stating that

> "timber fallers get reimbursed daily for driving their personal vehicles to our job sites.  They receive $20.00 per day for driving under 60 miles from the Fallon Logging shop, to our jobs.  If it's over 60 miles from our shop, they get $30.00 per day.  The monies are for the wear and tear of the vehicles, as the fuel is provided here at our shop."

(Ptf's Ex 5 at 1.)  Holstad testified Plaintiff rented equipment from his employer and received reimbursements from his employer that appeared on Plaintiff's W-2.  (*See* Ptf's Ex 1at 1; Ex 4.) Plaintiff's 2011 W-2 reported total wages of $46,933.  (Ptf's Ex 4.)  His December 2011 paystub

/ / /

indicated that, of that amount, $300 was for "PROTECTIVE EQUIPM," $3,960 was for "PICKUP RENT <60," and $3,893 was for "SAW RENT (SAIF EX)." (*Id.*)

Plaintiff provided a 2011 Activity Detail Report from his employer that states the date and quantity of Plaintiff's fuel fills. (Ptf's Ex 5 at 2-4.) The Report indicates that Plaintiff filled fuel at the shop 84 times in 2011. (*See id.* at 1-4.) Plaintiff tallied his total fuel from 2011 to be 1,518 gallons. (*See id.* at 4.) Plaintiff testified that he checked the fuel economy of his pickup truck and it was about 18 miles per gallon. Holstad testified that Plaintiff's fuel reimbursements substantiate his claimed mileage for 2011. (*See* Ptf's Ex 5.) Holstad testified that, of the 1,518 gallons of fuel, he estimated that Plaintiff used 260 gallons for saws, therefore, Plaintiff used 1,258 gallons of fuel for his truck. Holstad testified that, assuming Plaintiff's pickup truck got only 17 miles per gallon, that indicates Plaintiff drove 21,386 miles.

B.      *Cell Phone*

Plaintiff testified that, in 2011, he had a cell phone for work. He testified that he does not want a cell phone and only bought one because of work. Plaintiff testified that he used to have a landline until he got a cell phone. He testified that, in 2011, he had two cell phones; the second was a spare he kept in his glove compartment. Plaintiff testified that he may receive a few calls per day from other timber fallers to provide a safety check or to report that they are going to get more equipment. He testified that he receives personal calls periodically. Plaintiff testified that he did not allocate any of his cell phone expense to personal use; he thought his use was all business because that is the only reason he had a cell phone. Plaintiff testified his total monthly cell phone bill was $99.94 in 2013, and he thought his bill was about the same in 2011.

/ / /

/ / /

C.     *Work Clothes*

Holstad testified that safety is very important for timber fallers and Plaintiff was required to "wear 'protective clothing' modified in ways to assure [his] safety * * *." (*See* Ptf's Ex 1 at 2.) Plaintiff testified that OSHA requires him to cut the hems off his pants. He testified that, as a result, he does not wear his work pants outside of work. Plaintiff provided to Defendant a receipt for Rustler jeans and a receipt for suspenders. (*See* Def's Ex G at 3-4.)

D.     *Plaintiff's 2011 Income Tax Return*

Holstad testified that he did not prepare Plaintiff's 2011 income tax return, but he received the materials that Plaintiff provided to his original preparer. On his 2011 Schedule A, Plaintiff claimed unreimbursed employee expenses totaling $14,081. (Def's Ex B at 5.) That amount is comprised of a mileage expense of $11,875, based on 22,300 miles, and other business expenses totaling $2,206. (*Id.* at 6-7.)

E.     *Defendant's Audit*

Defendant audited Plaintiff's 2011 income tax return and disallowed $13,117 of Plaintiff's claimed unreimbursed employee business expenses. (Def's Ex C at 1.) Defendant allowed expenses for ropes, chainsaw parts, logging equipment, and boots. (Def's Ex G at 1.) Plaintiff requested a conference with Defendant, and the conference officer upheld the prior adjustments with the exception of an additional expense allowance of $25.95 for chainsaw oil. (Def's Ex C at 4; Ex G at 2.)

Currier testified that, under Revenue Ruling 99-7, commuting from home to a job site is personal commuting mileage, not business mileage. (*See* Ptf's Ex H at 25.) Thus, he questions whether Plaintiff may deduct his mileage.

/ / /

Currier testified that, even if Plaintiff's mileage were deductible, Plaintiff failed to adequately substantiate his mileage. He testified that taxpayers may not estimate mileage under the substantiation requirements of IRC section 274(d). (*See* Def's Ex H at 14-23.) Currier testified that Plaintiff told him at the audit interview that his mileage log was created at the end of the year based on memory, whereas Plaintiff testified at trial that he maintained his mileage log periodically. (*See* Def's Ex A at 13, Ex D at 5-6.) He testified that, due to Plaintiff's conflicting statements, he is unsure when Plaintiff created his mileage log. Currier testified that Plaintiff's log reported an odometer reading of 114,091 on January 1, 2011, whereas Plaintiff left a message for Defendant on January 6, 2015, stating that his mileage was 112,000 on January 1, 2011. (*See* Def's Ex F at 2.) He testified that he has no doubt that Plaintiff drove for work, but it is unclear where he drove, how far, or for what purpose.

Currier testified that Plaintiff's cell phone bill from 2013 is not adequate substantiation for his 2011 cell phone expense. He testified that Plaintiff failed to allocate his cell phone expense between business and personal usage.

Currier testified that Plaintiff is not entitled to deduct expenses for jeans, suspenders, and socks because those items are not specialized safety wear and may be used for everyday wear.

## II. ANALYSIS

The issue presented is whether Plaintiff is entitled to deduct certain unreimbursed employee business expenses for the 2011 tax year. Specifically, Plaintiff challenges Defendant's disallowance of his claimed deductions for transportation, cell phone, and clothing expenses. (*See* Ptf's Ex 1.)

The Oregon Legislature intended to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code relating to the measurement of

taxable income of individuals, estates and trusts, modified as necessary by the state's jurisdiction to tax and the revenue needs of the state[.]" ORS 316.007(1).[1] "Any term used in this chapter has the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined in this chapter." ORS 316.012. On the issue presented in this case, "Oregon law makes no adjustments to the rules under the Internal Revenue Code (IRC) and therefore, federal law governs the analysis." *See Porter v. Dept. of Rev.*, 20 OTR 30, 31 (2009).

IRC section 162(a) allows a deduction for "all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." "To be 'necessary[,]' an expense must be 'appropriate and helpful' to the taxpayer's business. * * * To be 'ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r*, 83 TCM (CCH) 1253, WL 236685 at *2 (2002) (internal citations omitted). IRC section 262 generally disallows deductions for "personal, living, or family expenses" not otherwise expressly allowed under the IRC.

Taxpayers must be prepared to produce "any books, papers, records or memoranda bearing upon [any] matter required to be included in the return[.]" ORS 314.425(1); *see also Gapikia v. Comm'r*, 81 TCM (CCH) 1488, WL 332038 at *2 (2001) ("Taxpayers are required to maintain records sufficient to substantiate their claimed deductions"). Generally, if a claimed business expense is deductible, but the taxpayer is unable to substantiate it fully, the court is permitted to make an approximation of an allowable amount. *Cohan v. Comm'r*, 39 F2d 540, 543-44 (2nd Cir 1930). The estimate must have a reasonable evidentiary basis. *Vanicek v. Comm'r*, 85 TC 731, 743 (1985). IRC section 274(d) supersedes the *Cohan* rule and imposes

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2009.

more stringent substantiation requirements for travel, meals, entertainment, gifts, and listed property under IRC section 280F(d)(4)(A)(i). Treas Reg § 1.274-5T(a).

Deductions are "a matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the deductions claimed. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. Plaintiffs must establish their claim "by a preponderance of the evidence[,]" which "means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). "In an appeal to the Oregon Tax Court from an assessment made under ORS 305.265, the tax court has jurisdiction to determine the correct amount of deficiency * * *." ORS 305.575.

A.   *Mileage*

A taxpayer may deduct "traveling expenses * * * while away from home in the pursuit of a trade or business[.]" IRC § 162(a)(2). However, a "taxpayer's costs of commuting to his place of business or employment are personal expenses and do not qualify as deductible expenses." Treas Reg 1.262-1(b)(5). "Commuting expenses are considered not to be required by business because where a taxpayer chooses to live is a personal decision. The distance a taxpayer chooses to live from his place of business does not change the character of the expense." *Harding v. Dept. of Rev.*, 13 OTR 454, 458 (1996). Traveling expenses are subject to the substantiation requirements of IRC section 274(d). Taxpayers must substantiate such expenses "by adequate

records or by sufficient evidence corroborating the taxpayer's own statement" the amount, time, place, and business purpose of the travel. IRC § 274(d); Treas Reg 1.274-5T(b)(2).

In this case, Plaintiff deducted mileage associated with his daily transportation to four different job sites in 2011. As noted above, daily commuting expenses are a personal expense and may not be deducted pursuant to IRC section 262. However, Rev Rul 99-7, 1991-1 CB 361 (Rev Rul 99-7) describes several circumstances under which a taxpayer may deduct daily transportation expenses for travel between the taxpayer's residence and a work location:

> "(1) A taxpayer may deduct daily transportation expenses incurred in going between the taxpayer's residence and a *temporary* work location *outside* the metropolitan area where the taxpayer lives and normally works. However, unless paragraph (2) or (3) below applies, daily transportation expenses incurred in going between the taxpayer's residence and a *temporary* work location *within* that metropolitan area are nondeductible commuting expenses.
>
> "(2) If a taxpayer has one or more regular work locations away from the taxpayer's residence, the taxpayer may deduct daily transportation expenses incurred in going between the taxpayer's residence and a *temporary* work location in the same trade or business, regardless of the distance. * * *
>
> "(3) If a taxpayer's residence is the taxpayer's principal place of business within the meaning of § 280A(c)(1)(A), the taxpayer may deduct daily transportation expenses incurred in going between the residence and another work location in the same trade or business, regardless of whether the other work location is *regular* or *temporary* and regardless of the distance."

(Emphasis in original.) A work location is temporary if employment at that location "is realistically expected to last (and does in fact last) for 1 year or less." *Id.*

No evidence was presented to suggest that Plaintiff's residence was his principal place of business, as required by the third circumstance in Rev Rul 99-7. Thus, the court focuses on the first and second circumstances.

The first and second circumstances described in Rev Rul 99-7 each require that the taxpayer's travel was to a temporary work location. According to his mileage log, Plaintiff

worked at four different locations in 2011. No evidence was presented to suggest that any of those work locations were expected to last for more than one year. The court concludes that Plaintiff's four work locations were "temporary" within the meaning if Rev Rul 99-7.

1.    *Temporary Work Location Outside of Metropolitan Area*

Under the first circumstance described in Rev Rul 99-7, a taxpayer may deduct daily transportation expenses for travel between the taxpayer's residence and a temporary work location outside of the metropolitan area where the taxpayer lives and normally works. In defining the metropolitan area where a taxpayer lives and normally works, the US Tax Court indicated that it will "evaluate the facts and circumstances" and "decline[d] to adopt any such rigid definition" of metropolitan area, such as the OMB standard defining metropolitan statistical area. *See Bogue v. Comm'r*, 102 TCM (CCH) 41, WL 2709818 at *10-11 (2011), *aff'd* 522 Fed Appx 169 (3rd Cir 2013). The taxpayer must "normally" work in a particular metropolitan area. *See Austin v. Dept. of Rev.*, 20 OTR 20, 23-26 (2009) (concluding that the taxpayer did not "normally" work in the Salem metropolitan area because, over a seven year period, the taxpayer "worked in the Salem metropolitan area in significantly varying amounts of time, and in two years, not at all"). The taxpayer must also live in the metropolitan area where the taxpayer normally works. *See Aldea v. Comm'r*, 79 TCM (CCH) 1917, WL 371549 at *4 (2000) (upholding the disallowance of the taxpayer's daily transportation expenses because "[t]he record does not indicate that [taxpayer] ever worked in, had the prospect of work in, or had any other business tie to [the city where taxpayer lived]"); *see also Porter v. Dept. of Rev.*, 20 OTR 30, 33 (2009) (reaching the same conclusion as in *Aldea*).

In this case, Plaintiff presented no evidence from which the court may determine the metropolitan area where he lived and normally worked. Plaintiff did not, for example, present

evidence of his past work locations or provide a map showing the location of any of his work locations in 2011. Other than the round trip mileage reported by Plaintiff, the court received no evidence of Plaintiff's work locations in 2011 relative to the location of his residence. On that question, Holstad wrote that it "would be quite a stretch" to conclude that "the Tillamook Forest" was a metropolitan area. (Ptf's Ex 1at 1.) Holstad's assertion that the Tillamook National Forest could not be considered a metropolitan area does not help the court determine whether Plaintiff lived and normally worked in a particular metropolitan area and, if so, whether he traveled outside of that metropolitan area for work in 2011. The court finds Plaintiff has failed to prove by a preponderance of the evidence that he is entitled to deduct daily transportation expenses based on the first circumstance described in Rev Rul 99-7.

2. *Regular Work Location*

Under the second circumstance described in Rev Rul 99-7, a taxpayer may deduct daily transportation expenses for travel between the taxpayer's residence and a temporary work location *if* the taxpayer has one or more regular work locations away from the taxpayer's residence. With respect to the "regular work location" circumstance, the US Tax Court observed that the term "regular work location" is not defined in Rev Rul 99-7 and determined that it should be given the same definition as "regular place of business" under Rev Rul 90-23, 1990-1 CB 28. *Bogue*, WL 2709818 at *12. Rev Rul 90-23 defines "regular place of business" as "any location at which the taxpayer works or performs services on a regular basis."

Plaintiff testified that he was required to fill fuel at his employer's shop and he provided a letter from his employer corroborating his testimony. Plaintiff provided a document detailing his fuel fills in 2011 that indicated Plaintiff filled fuel at his employer shop 84 times in 2011. It is unclear from the evidence and testimony presented in this case if Plaintiff performed any other

services at his employer's shop. Plaintiff's employer's shop *may* be a regular work location, but Plaintiff did not present sufficient evidence for the court to determine one way or the other. Plaintiff has, therefore, failed to meet his burden of proof that he is entitled to deduct daily transportation expenses under any of the circumstances described in Rev Rul 99-7.

B.      *Cell Phone*

Plaintiff claimed a deduction for expenses associated with his cell phone. Plaintiff testified that his employer required him to maintain a cell phone, but provided no documentary evidence to corroborate his testimony. Plaintiff provided a reasonable explanation of how a cell phone was appropriate and helpful in his line of work; he used the cell phone to check in with other timber fallers and his employer. However, Plaintiff's claim that his cell phone was used 100 percent for business is not reasonable. Plaintiff conceded that he received some personal phone calls on his cell phone and he testified that he gave up his landline when he obtained a cell phone. Plaintiff did not provide any persuasive evidence from which the court can determine the total amount of Plaintiff's cell phone expenses in 2011, or from which the court can determine a reasonable allocation for business use. Plaintiff's only evidence of his cell phone expense was a cell phone bill from 2013, which has no bearing on 2011.

C.      *Work Clothes*

Expenses for work clothes may be deductible under IRC section 162(a). "The generally accepted rule governing the deductibility of clothing expenses is that the cost of clothing is deductible as a business expense only if: (1) the clothing is of a type specifically required as a condition of employment, (2) it is not adaptable to general usage as ordinary clothing, and (3) it is not so worn." *Pevsner v. Comm'r*, 628 F2d 467, 469 (5th Cir 1980), citing *Donnelly v. Comm'r*, 262 F2d 411, 412 (2nd Cir 1959); *see also Popov v. Comm'r*, 246 F3d 1190, 1192 n2

(9th Cir 2001). In *Donnelly*, the Second Circuit upheld a lower court's determination that the taxpayer's work clothes – "aprons and strong work clothes" used by taxpayer in his work "as a buffer and polisher of rough plastics" – were not deductible expenses because they "were not required as a condition of employment" and were "of a type adaptable to general usage." *Id.*

Plaintiff provided receipts for purchases of two pairs of jeans and of suspenders. He testified that OSHA required him to cut the hems off of his jeans for safety purposes. Plaintiff provided no documentary evidence from either his employer or OSHA describing specific clothing requirements for Plaintiff's employment. Typically, jeans and suspenders are the types of clothing adaptable to general usage. The court finds that Plaintiff failed to meet his burden of proof that he is entitled to any deduction for work clothes.

## III. CONCLUSION

After careful consideration, the court concludes that Plaintiff has failed to establish by a preponderance of the evidence that he is entitled to any additional deduction for unreimbursed employee business expenses for the 2011 tax year. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of April 2016.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by __mailing__ to: 1163 State Street, Salem, OR 97301-2563; or by __hand delivery__ to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within __60__ days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on April 25, 2016.*