IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| TIM L. O'CONNOR | ) | |
| and HEATHER D. O'CONNOR, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 170315R |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION**[1] |

Plaintiffs appealed Defendant's Notice of Deficiency, dated July 13, 2017, for the 2013

tax year. A trial was held on April 17, 2018, in the Oregon Tax Court. Timothy L. O'Connor

(O'Connor) appeared and testified on behalf of Plaintiffs. Elisa Tibbs (Tibbs) and Nichol

Schauer appeared on behalf of Defendant. No testimony was presented on behalf of Defendant.

Plaintiffs' Exhibits 1 to 11 were accepted into evidence without objection. Defendant's Exhibits

A to E were accepted into evidence without objection.

## I. STATEMENT OF FACTS

O'Connor testified that he works as the manager of consumer services for a sports optics

company. His employer sells rifle scopes, binoculars, range finders and related equipment

primarily for the military, law enforcement, and for hunters. In his position, O'Connor oversees

technical services, the warranty department, the "custom shop", and the training division.

O'Connor testified that his employer requires him to have a high level of technical and practical

knowledge of its products. O'Connor's employer allows him to borrow, on a short-term basis,

---

[1] This Final Decision incorporates without change the court's Decision, entered October 24, 2018. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

items from its inventory to support his knowledge of its products. O'Connor testified that he found that short-term borrowing of items from the employer was insufficient for his need to become an expert on how the products worked in the real world. O'Connor testified that federal regulations prevent him borrowing rifles for testing purposes.

During the tax year in issue, O'Connor purchased a number of firearms and related materials such as gun sights, and ammunition so he could test them at ranges and while hunting. O'Connor testified that he took potential customers out hunting and allowed them to borrow items from his collection. He purchased camping items for use on those excursions, such as camping bunk beds and a camping stove. He testified that, other than a purchase for night vision goggles, he did not ask the employer for reimbursement because he understood that the company would not reimburse him for the items. O'Connor testified that he asked his employer if it would purchase night vision goggles, at a cost of approximately $7,000, and the employer declined. O'Connor testified that he purchased the goggles at his own expense to test the employer's scopes designed to work with the special goggles because he needed experience so he could understand the challenges in working with those items. After using the firearms and related items, O'Connor retained them in his collection and put them in a special vault with an alarm system separate from his home system. O'Connor did not keep a log detailing the use of the items he purchased or their disposition.

O'Connor testified that his employer allowed and paid him to work as a firearms instructor for five days with the Gunsite Academy. The Academy required him to wear a "uniform" consisting of a long-sleeved "5.11 like shirt" and pants. O'Connor testified that "5.11" is a brand of tactical gun range-wear. He had the shirts embroidered with "Gunsite Instructor." He purchased five shirts explaining that laundering the shirts each day was

impractical. The pants were matching, but were not embroidered. O'Connor testified that he purchased cold weather range gear when he was caught in bad weather while on a work-related trip in Switzerland. He testified that they are generally suitable as ordinary wear, but that he does not ski and does not ordinarily wear them.

O'Connor maintained memberships in the Rocky Mountain Elk Foundation and the Safari Club International and deducted annual membership fees of $235 and $400, respectively. He testified that those organizations focus on supporting conservation of wildlife and "fence building" with the firearms industry. He testified that his employer did not require membership in either organization.

Plaintiffs claimed a total of $31,777 in unreimbursed employee expenses for the 2013 tax year. (Ptfs' Ex 2 at 1.) A breakdown of the expenses claimed from Ptfs' Ex 1 is in the following table:

| Amount | Description |
| --- | --- |
| $81.00 | Parking |
| $158.00 | Travel expense (Hotel) |
| $235.00 | Professional membership (Rocky Mountain Elk Foundation) |
| $400.00 | Professional membership (Safari Club International) |
| $185.00 | Travel expense (gas) |
| $153.00 | Meals and Entertainment |
| $30,565 | Depreciation (purchases of firearms, scopes, ammunition, firearm related components, and camping supplies) |

## II. ANALYSIS

This case is about the deductibility of employee business expenses claimed by Plaintiffs for the 2013 tax year. In analyzing Oregon income tax cases, the court starts with several general guidelines. First, the court is guided by the intent of the legislature to make Oregon's personal income tax law identical in effect to the federal Internal Revenue Code (IRC) for the purpose of determining taxable income of individuals. ORS 316.007.[2] Second, in cases before the court, the party seeking affirmative relief bears the burden of proof and must establish his or her case by a "preponderance" of the evidence. ORS 305.427. Third, allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992).

IRC section 162(a) allows a deduction for ordinary and necessary expenses incurred during the taxable year in carrying on a trade or business. Generally, the performance of services as an employee constitutes a trade or business. *Primuth v. Comm'r,* 54 TC 374, 377 (1970). Whether an expenditure is ordinary and necessary is generally a question of fact. *Comm'r v. Heininger*, 320 US 467, 475, 64 S Ct 249 (1943). For such expenses to be deductible, the taxpayer must not have received reimbursement and must not have the right to obtain reimbursement from his employer. *See Orvis v. Comm'r,* 788 F2d 1406, 1408 (9th Cir 1986), *affg*. TC Memo1984–533. In contrast, a deduction is not available for personal, living, or family expenses. IRC 262(a). The taxpayer has the burden of proving that an expense is of a business rather than personal nature. *Walliser v. Comm'r (Walliser)*, 72 TC 433, 437 (1979).

/ / /

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

*A.* *Purchases of Firearm and Related Materials*

A majority of Plaintiffs' deductions were for the purchase of firearms and accessories, ammunition, scopes, night vision goggles, binoculars, holsters, and camping equipment. O'Connor argued that those expenses were necessary and helpful for his employment because he was required to be an expert in his field for customers and to train his staff. O'Connor argued that his employer required him to maintain expertise in hunting and in the interplay between his employer's scopes and various firearms they could be mounted on. He also testified about his need for "experiential" real-world knowledge and practical applications involving his employer's products that were only available with long-term use in firing ranges or while hunting.

Defendant argued that firearms are "listed property" under IRC section 280F(4)(iii) that is "any property of a type generally used for purposes of entertainment, recreation, or amusement" and thus require a heightened level of evidence pursuant to IRC section 274(d). Alternatively, Defendant argues the items should have been depreciated over time as capital investments under IRC section 179.

The court first observes that it could find no reported cases supporting Defendant's broad policy argument that firearms are purely recreational products and must be considered listed property under IRC section 280F. Rather, it appears the question is one of fact. Firearms could be recreational or business related based on the evidence presented. In this case, the court finds O'Connor's testimony persuasive that the firearms and related items he purchased and used were business related and helpful to his occupation. However, just because the products O'Connor purchased are helpful to his occupation in general, does not automatically mean that the purchases may be deducted as a business expense. Expenditures that are not reimbursable by the employer but that enable an employee to better perform his duties to the employer must have a

direct bearing on the amount of his compensation or chances for advancement. *See Walliser,*72 TC at 437; *see also Heineman v. Comm'r,* 82 TC 538, 545 (1984). Thus, an employer requirement that its employee be a general expert in the field of hunting does not by itself make every hunting trip or expenditure of that type a business expense.

One challenging aspect of this portion of the case is the dearth of cases directly on point. However, the general court analysis of the dichotomy between deductible business expense and nondeductible personal expense can be applied here. The starting point for this issue is the comparison between IRC section 162 that allows deduction of "ordinary and necessary" expenses incurred by the taxpayer in carrying on a trade or business versus personal expenses that are nondeductible under IRC section 262. The challenge presented in this case is best exemplified by O'Connor's testimony in which he stated the purchases of firearms and related items were "100 percent personal and 100 percent business." Under the IRC, Plaintiffs' theory is not allowed; purchases are either 100 percent business, 100 percent personal, or somewhere in between. That area of somewhere in between requires the court to allocate the expense between business and personal. One tax treatise put it this way:

> "Expenses can be allocated between their business and person components, with only the amount assigned to the business function being deductible. This approach is often applied to expenditures for dual purpose facilities, when business and personal uses can be separated by reference to the amounts of time, space, etc. devoted to each, such as an automobile used for both business and pleasure."

Bittker & Lokken, *Federal Taxation of Income Estates and Gifts*, ¶ 20.2.1 (3rd Ed 1999).

O'Connor testified that he would purchase a specific firearm or other item to see how that item performed and he gained knowledge about adjustments that were required to maximize its use. The court is persuaded that this represents a business purpose. After that, the items appear to go into O'Connor's personal collection and used for hunting – which is generally a personal

activity. O'Connor offered no evidence for the disposition of the firearm related items. Clearly, some of the items are for both business and personal use. O'Connor offered no evidence upon which the court could allocate between personal and business use. The court can make estimates of expenses based on reasonable information pursuant to *Cohan v. Comm'r*, 39 F2d 540 (2d Cir 1930), however, here the allocation of business and personal use would be no more than a guess. Thus, the deduction must be denied for lack of substantiation. Additionally, the court need not address Defendant's argument that the purchases should be depreciated over time because it is deciding the case on other grounds.

B.      *Professional Memberships*

O'Connor deducted annual membership fees of $235 and $400 respectively for the Rocky Mountain Elk Foundation and the Safari Club International. To deduct those memberships as business expenses, O'Connor must show that more than the membership is helpful in obtaining clients. *Boehm v. Comm'r (Boehm)*, 35 BTA 1106, 1109 (1937); *Henry v. Comm'r*, 36 TC 879, 886 (1961). There must be a direct impact between membership and the business. *Hymel v. Comm'r*, 794 F2d 939 (5th Cir 1986). Thus, for example, it is not sufficient that a taxpayer show he obtained more business in general by being a member of a country club, as that does not show the expense was primarily for a business purpose. *Randall v. Comm'r*, 56 TC 869 (1971).

O'Connor presented no evidence to indicate that his employer required as a condition of his employment to be a member of the two organizations he joined. Based on his testimony, those organizations appear to focus on supporting conservation of wildlife and "fence building" with industry. Those laudable goals are only tangentially related to his employment. As in the *Boehm* case, membership in the organizations might lead to some additional business, but absent a direct impact between the organization and sales, those are considered personal expenses. Therefore, that deduction is not allowed.

C.    *Travel Expenses*

O'Connor testified that he deducted $157 for staying at a Wyndham Hotel that he recalled was due to his vehicle breaking down during an elk hunting trip. (Ptfs' Ex 11 at 4.) He presented several gas purchases shown on a credit card summary statement, but no actual receipts. He also claimed $81 for parking expense; $185 in fuel expense; and $153 for meals and entertainment. (Def's Ex B at 3, 7.)

Meals, entertainment, and travel expenses are subject to heightened "requirements for substantiating the amount, time, and place of the expense; the business purpose of the expense; and the relationship to the taxpayer of the persons entertained." *Harding v. Dept. of Rev.*, 13 OTR 454, 461 (1996) (citing Treas Reg § 1.274-5T(c)). No records were presented to show the business purposes for his travel expenses. The evidence presented does not meet the substantiation requirements of IRC section 274. Consequently, the deductions are not allowed.

E.    *Clothing*

O'Connor claimed a deduction for several items of clothing. First, his employer "loaned" him to work for the Gunsite Training Academy where he was a provost instructor. O'Connor testified that he was required to wear a "uniform" that consisted of pants and shirts from a brand of range wear known as "5.11." The shirt was a long sleeve knit embroidered with the words "Gunsite Instructor." (Ptfs' Ex 9 at 3.) Second, O'Connor deducted for cold weather range gear that consisted of a jacket and pants. He purchased those items on a work sponsored trip to Switzerland when he got caught in bad weather. O'Connor testified that, although the jacket and pants are suitable for general wear, he does not ski and would not ordinarily wear them.

Expenses for work clothes may be deductible under IRC section 162(a). "The generally accepted rule governing the deductibility of clothing expenses is that the cost of clothing is

deductible as a business expense only if: (1) the clothing is of a type specifically required as a condition of employment, (2) it is not adaptable to general usage as ordinary clothing, and (3) it is not so worn." *Pevsner v. Comm'r*, 628 F2d 467, 469 (5th Cir 1980), citing *Donnelly v. Comm'r*, 262 F2d 411, 412 (2nd Cir 1959); *see also Popov v. Comm'r*, 246 F3d 1190, 1192 n2 (9th Cir 2001). Thus, even though a particular taxpayer would not ordinarily wear an item, the court looks objectively as to whether the item is adaptable to ordinary wear. *See Barnes v. Comm'r*, 111 TCM (CCH) 1359 (Taxpayer representing company was required to wear Ralph Lauren clothing, which she would not ordinarily wear, but the clothes are "suitable for general or personal wear.")

As to the 5.11 range pants and cold weather gear, the evidence shows they were adaptable to general use as ordinary clothing. As to the 5.11 range shirts with embroidery, the courts have expressed differing views. *See, e.g.* Garcia v. Comm'r, 111 TCM (CCH) 1087, 2016 WL 626043 at *3 (shirts embroidered with employer's logo "might qualify for deduction as a uniform"); *Mortrud v. Comm'r*, 44 TC 208 (1965) (matching pants, shirts, jacket, and cap embroidered with employer's name are deductible). However, the courts have also denied a deduction under certain circumstances for military uniforms. *See Motch v. Comm'r*, 11 TC 777, 1948 WL 268 (TC 1948), *rev'd on other grounds*, 180 F2d 859, 50-1 USTC P 9239, 39 AFTR (P-H) P 140 (6th Cir 1950). Just because O'Connor's embroidered shirt was a "uniform" required by his employer does not mean that it was not suitable for ordinary wear. Rev Rul 70-474. Other than the embroidery, O'Connor presented no evidence to show that his shirts were anything other than ordinary long sleeve shirts. Thus, the deduction is denied.

/ / /

/ / /

### III. CONCLUSION

After careful consideration, the court finds that Plaintiffs' purchases of firearms and related items were expenses that were both business and personal. Because Plaintiffs presented no evidence upon which the court could allocate between business use, which is potentially deductible, and personal use, which is nondeductible, the deductions must be denied. Plaintiffs did not present sufficient evidence of a direct connection between O'Connor's club memberships and his business. Those expenses are personal in nature and are not deductible as business expenses. Plaintiffs have failed to sufficiently substantiate their travel and entertainment expenses and, thus, the deduction is denied. Additionally, Plaintiffs have not demonstrated that their clothing purchases were unsuitable for ordinary wear. Consequently, they are personal expenses and may not be deducted. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ___ day of November, 2018.

RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Davis and entered on November 14, 2018.*