IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| STEPHEN W. CRUTHIRDS and ERIN A. CRUTHIRDS, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 150473N |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) | |
| Defendant. | ) | **FINAL DECISION** |

This Final Decision incorporates without change the court's Decision, entered May 20, 2016. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* TCR–MD 16 C(1).[1]

Plaintiffs appeal Defendant's Notice of Deficiency Assessment, dated August 18, 2015, for the 2011 tax year. A telephone trial was held on February 2, 2016. Plaintiff Erin A. Cruthirds (Erin) appeared and testified on behalf of Plaintiffs.[2] Johnny Helt (Helt), tax auditor, appeared and testified on behalf of Defendant. Plaintiffs' Exhibits 1 to 34 and Defendant's Exhibits A to I were received without objection.

## I. STATEMENT OF FACTS

Plaintiffs claimed the following unreimbursed employee business expenses on their 2011 Schedule A: $10,029 vehicle; $13,192 lodging; $7,803 meals; $974 other. (Ptfs' Ex 26 at 1.) They were all related to Plaintiff Stephen Cruthirds' (Stephen) work as a cable splicer. (*See id.*)

Erin testified that Stephen has been a cable splicer for over 30 years. She testified that

---

[1] Tax Court Rules–Magistrate Division (TCR–MD)

[2] When referring to a party in a written decision, it is customary for the court to use the last name. However, in this case, the court's Decision recites facts and references to two individuals with the same last name, Cruthirds. To avoid confusion, the court will use the first name of the individual being referenced.

there are not many cable splicers in the Pacific Northwest. Erin testified that Stephen works for phone companies and has had jobs in Oregon, Washington, Idaho, Nevada, and Utah. She testified that, in April 2011, Stephen took a job with ADEX Corporation (ADEX), which won its bid for a contract with Qwest. Erin testified that ADEX is a Pennsylvania company that has a yard in Eugene, Oregon. (*See* Ptfs' Ex 6.) She testified that Stephen's job with ADEX ended in spring 2012; either April or May. Erin testified that, before Stephen obtained his contract with ADEX in April 2011, he was unemployed and looking for work. She testified that it was typical for Stephen to be unemployed for a period of time between jobs.

Plaintiffs provided a copy of the ADEX offer letter, dated April 7, 2011, which stated that Stephen's position as a "Cable Splicer" would begin on April 11, 2011, and end "tbd." (Ptfs' Ex 6 at 1.) It included hourly compensation and a "Vehicle & Equip Lease." (*Id.* at 1, 5-6.) Under the heading "Expenses," the offer stated that "[e]xpenses will be reimbursed and identified on ADEX expense reports with appropriate receipts attached." (*Id.* at 2.) Under the heading "Travel/Expense Reports," the offer stated:

> "ADEX expense reports are to be completed weekly and approved by authorized ADEX or client personnel. The original expense report with receipts attached will be submitted to the authorized ADEX representative. *You are responsible* to FAX a copy of the approved weekly expense report and receipts SUNDAY of each week * * *. Failure to submit weekly will result in delay of payment for wages and expenses."

(*Id.* (emphases in original).) The ADEX Employment Agreement listed ADEX's location as Eugene, Oregon. (*Id.* at 4.) It stated that "[e]mployee, during each period as he/she is eligible for subsistence allowances as herein provided, will be paid a per diem allowance of $ N/A per day * * *." (*Id.*) Helt testified that the ADEX offer indicated that Stephen had a right to reimbursement from ADEX for his travel expenses. Erin testified that reimbursement provision did not apply to Stephen, noting the provision identifying his per diem allowance as "N/A."

Erin testified that, as required by ADEX, Stephen kept a weekly log in which he recorded job numbers. (*See* Ptfs' Exs 8, 21.) She testified that he did not record specific job locations and QWEST would not provide the locations due to security reasons; in any event, the job locations would have been GPS coordinates, not addresses, because they were telephone poles, manhole covers, and similar sites. (*See* Ptfs' Ex 34.) The timesheets that Stephen submitted to ADEX all list the "Location" as Eugene, Oregon. (Ptfs' Ex 8.) Erin testified that Stephen's jobs for ADEX in 2011 were all over Western Oregon; not only in the Eugene metropolitan area. She testified that, in 2011, Stephen went to the ADEX yard in Eugene to pick up supplies, but he was not required to check in at the yard every day and did not go to the yard every day.

Plaintiffs provided a letter from ADEX's General Manager stating that Stephen's work orders from ADEX were "scattered throughout the state." (Ptfs' Ex 34.) The letter stated that Stephen's employment agreement with ADEX and "ADEX Corporation's contract with Qwest prohibit the divulging of client proprietary information. Specific work addresses are considered proprietary for security reasons." (*Id.*) As a result, ADEX would not provide specific work addresses.

Plaintiffs provided a weekly travel log from 2011. (Ptfs' Ex 21.) The log identifies the date (on a weekly basis), the job number, and several numbers associated with each trip. (*Id.*) A city location is written next to some of the entries. (*See id.*) The locations listed on the log are: Cottage Grove, Eugene, Albany, Springfield, Corvallis, Veneta, and Leaburg. (*See id.*)

Erin testified that, in 2011, Stephen had a "bucket van" that he used for "aerial work" and a truck that he used for other work. She testified that Plaintiffs had two other vehicles that they used for personal purposes. Erin testified that both of Stephen's vehicles--the van and truck-- were used 100 percent for business. She testified that Stephen's truck had magnetic decals on it

for his various employers; it had tool shelves built in; and it was covered in "icky-pick." (*See* Ptfs' Ex 31 at 2 (describing "icky-pick").) Erin testified that Stephen often needed both the truck and the van for a job. The "Vehicle and Equipment Rental Agreement" between Stephen and ADEX was for the van. (Ptfs' Ex 27 at 5.) Pursuant to that agreement, Stephen received a lease payment for each day that he used the van at least four hours. (*Id.*)

Erin testified that Plaintiffs' home in 2011 was in Redmond and she concluded Redmond was their tax home. She testified that all of Stephen's jobs were temporary and, therefore, away from home. Erin testified that, depending on the job location, Stephen would return home to Redmond on the weekends if he could. She testified that when he worked in Idaho, for example, he typically could not return home on the weekend, but when he was working in the Eugene area, he could. Erin testified that if Stephen returned home for a weekend he drove his truck.

A.      *Plaintiffs' Claimed Employee Business Expense Deductions*

1.      *Mileage*

Erin testified that she used the odometer readings from the van and truck to determine Stephen's 2011 business mileage. (*See* Ptfs' Ex 27 at 1.) She testified that Plaintiffs deducted all of Stephen's 2011 mileage for the truck and van because they determined the truck and van were used solely for business. Plaintiffs reported Stephen's truck's odometer reading as 224,993 on January 1, 2011, and 238,511 on December 31, 2011, for a total of 13,518 miles. (*Id.*) They reported his van's odometer reading at 115,589 on January 1, 2011, and at 120,502 on December 31, 2011, for a total of 4,913 miles. (*Id.*) Erin testified that she provided service receipts for the van and truck to substantiate Plaintiffs' reported business mileage. (*See id.* at 2-10.) Plaintiffs provided a copy of the Vehicle and Equipment Rental Agreement that Stephen signed with ADEX and it stated the "Current Mileage" as 115,589 as of April 9, 2011. (*Id.* at 5.)

2. *Meals and lodging*

Erin testified that, in 2011, Stephen worked 34 weeks with 4 nights of lodging each week. (*See* Ptfs' Ex 23 at 2.) She testified that Stephen typically shared motels or similar accommodations with other workers when he was away for work. Erin testified that she used the federal GSA *per diem* rates for Eugene/Lane County to calculate Stephen's meals and lodging; he did not keep any receipts. (*See id.* at 1.) Plaintiffs calculated a total lodging deduction of $13,192 based on 136 nights multiplied by $97 per night. (*Id.* at 2.) They calculated a total meal deduction of $7,803 based upon $51 per day for Tuesdays, Wednesdays, and Thursdays, and $38.25 per day for Mondays and Fridays. (*See id.*)

3. *Other business expenses*

Plaintiffs provided a one-page list entitled "Gross Miscellaneous Deductions." (Ptfs' Ex 31 at 1.) It included a list of purchases, primarily "small tools needed for work," a calculation of Plaintiffs' cell phone expense allocated to business, a calculation of Plaintiffs' internet expense allocated to business, a vehicle wash expense, and a laundry expense. (*Id.*) The expenses listed totaled $974. (*Id.*) Plaintiffs attached receipts to substantiate Stephen's expenses for tools and a few other items, totaling $175.63. (*Id.*, Ex 32.)

Erin testified that Stephen was required to have a cell phone for work; he would not have had one otherwise. She testified that Stephen's cell phone was a basic flip phone and he used it to communicate with the central office and with his family when he was working. Erin testified that Plaintiffs had a family plan that cost about $127 to $131 per month, total, for 1500 minutes; under the plan, the first phone was $70 and each additional line was $10. She testified that she allocated about one-quarter of the cost to Stephen's work and deducted $35 per month for the phone. (*See* Ptfs' Ex 31.)

Erin testified that Stephen used the internet to submit his weekly timesheets and when he was job hunting, so she allocated $10 per month for business use of the internet. (*See* Ptfs' Ex 31 at 1.) She testified that Stephen's internet access was from Plaintiffs' house. Plaintiffs wrote that their internet bills were "approximately $30/month in 2011." (*Id.*)

Erin testified that Stephen had to wash his vehicles every week to remove the "icky-pick," which is flammable, so she estimated an expense for vehicle washes and also for laundry because Stephen did not wash his work clothes at home; he had to go to a laundromat. Plaintiffs estimated a vehicle wash expense of $153 based on $9 per week multiplied by 17 weeks. (Ptfs' Ex 31 at 1.) They estimated a laundry expense of $105. (*Id.*) Erin testified that she did not have any receipts; those were reasonable estimates.

Erin testified that Plaintiffs have been audited by the IRS twice and, each time, the IRS allowed Plaintiffs' claimed deductions. (*See* Ptfs' Exs 1 to 5.)

 B.    *Defendant's Audit and Conference*

Following its audit of Plaintiffs' 2011 income tax return, Defendant disallowed all but $54 of Plaintiffs' claimed vehicle expenses; disallowed all of Plaintiffs' claimed meals and lodging expenses; and disallowed all but $178 of Plaintiffs' other claimed business expenses. (Ptfs' Ex 33.) The $178 allowed was for Stephen's tool expenses. (*Id.* at 2.)

In its conference decision, Defendant upheld the audit adjustments. (*See* Ptfs' Ex 26.) Defendant's conference officer determined that Stephen's "tax home was the Eugene-Springfield metropolitan area until December 2012. During 2012 and nine months of 2011 [Stephen] worked at different job assignments in Lane County." (*Id.* at 2.) She found that Stephen's only temporary job site outside of the Eugene-Springfield metropolitan area was one located in

/ / /

Albany. (*Id.*) The conference officer also found that Stephen's employment in the Eugene area lasted for more than one year and was not, therefore, temporary. (*Id.* at 3.)

Defendant's conference officer determined that Stephen's van qualified for the "exception to the strict documentary and substantiation requirements for a qualified nonpersonal use vehicle," but concluded his truck was a general purpose truck" and did not qualify for that exception. (Ptfs' Ex 26 at 3.) However, she upheld the auditor's disallowance of all of Stephen's mileage because his "log did not indicate whether [he was] driving [his] truck or van, nor did it verify [his] commuting miles, or [his] job locations[.]" (*Id.*)

Helt testified that Defendant's position is that Stephen's tax home was the Eugene metropolitan area in 2011. He testified that he found 98 percent of Stephen's job sites for ADEX were in the Eugene metropolitan area. Helt testified that he agreed Stephen's van was 100 percent business because it was a "bucket truck" but he did not allow any mileage for the van based on his tax home determination; any mileage was commuting, which is personal.

## II. ANALYSIS

The issue presented is whether Plaintiffs are entitled to deduct certain unreimbursed employee business expenses for the 2011 tax year. Specifically, Plaintiffs challenge Defendant's disallowance of their claimed deductions for mileage, lodging, meal, cell phone, internet, laundry, and vehicle wash expenses.

The Oregon Legislature intended to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code relating to the measurement of taxable income of individuals, estates and trusts, modified as necessary by the state's jurisdiction to tax and the revenue needs of the state[.]" ORS 316.007(1).[3] "Any term used in this chapter

_____

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2009.

has the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined in this chapter." ORS 316.012. On the issue presented in this case, "Oregon law makes no adjustments to the rules under the Internal Revenue Code (IRC) and therefore, federal law governs the analysis." *See Porter v. Dept. of Rev.*, 20 OTR 30, 31 (2009).

IRC section 162(a) allows a deduction for "all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. To be 'necessary[,]' an expense must be 'appropriate and helpful' to the taxpayer's business. * * * To be 'ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r*, 83 TCM (CCH) 1253, WL 236685 at *2 (2002) (internal citations omitted). IRC section 262 generally disallows deductions for "personal, living, or family expenses" not otherwise expressly allowed under the IRC.

Taxpayers must be prepared to produce "any books, papers, records or memoranda bearing upon [any] matter required to be included in the return[.]" ORS 314.425(1); *see also Gapikia v. Comm'r*, 81 TCM (CCH) 1488, WL 332038 at *2 (2001) ("[t]axpayers are required to maintain records sufficient to substantiate their claimed deductions"). Generally, if a claimed business expense is deductible, but the taxpayer is unable to substantiate it fully, the court is permitted to make an approximation of an allowable amount. *Cohan v. Comm'r*, 39 F2d 540, 543-44 (2nd Cir 1930). The estimate must have a reasonable evidentiary basis. *Vanicek v. Comm'r*, 85 TC 731, 743 (1985). IRC section 274(d) supersedes the *Cohan* rule and imposes more stringent substantiation requirements for travel, meals, entertainment, gifts, and listed property under IRC section 280F(d)(4). Treas Reg § 1.274-5T(a).

///

Deductions are "a matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the deductions claimed. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. Plaintiffs must establish their claim "by a preponderance of the evidence[,]" which "means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). "In an appeal to the Oregon Tax Court from an assessment made under ORS 305.265, the tax court has jurisdiction to determine the correct amount of deficiency * * *." ORS 305.575.

A.    *Right to Reimbursement*

"Numerous courts have held that an expense is not 'necessary' under § 162(a) when an employee fails to claim reimbursement for the expense, incurred in the course of his employment, when entitled to do so." *Orvis v. Comm'r*, 788 F2d 1406, 1408 (9th Cir 1986) (citations omitted). Stephen's Employment Agreement with ADEX stated that "[e]xpenses will be reimbursed and identified on ADEX expense reports with appropriate receipts attached" and included a clause addressing how to submit receipts for weekly expenses. Erin testified that, contrary to that language, Stephen had no right to reimbursement of travel expenses from ADEX. She noted that the contract clause identifying Stephen's per diem allowance had been filled in with "N/A." It would have been helpful to receive additional evidence on this issue, such as a letter from ADEX clarifying its reimbursement policy with respect to Stephen. Nevertheless, the

court is persuaded based on the evidence and Erin's credible testimony that Stephen more likely than not lacked a right to reimbursement from ADEX.

B.      *Traveling Expenses*

A taxpayer may deduct "traveling expenses * * * while away from home in the pursuit of a trade or business[.]" IRC § 162(a)(2). "The purpose of IRC section 162(a)(2) is to ameliorate the effects of business which requires taxpayers to duplicate personal living expenses." *Harding v. Dept. of Rev.*, 13 OTR 454, 458 (1996). "Consequently, courts must determine whether the claimed expense is actually required by the business rather than by the taxpayer's personal choice." *Id.* To deduct travel expenses under IRC section 162(a)(2), taxpayers must show that the expenses "(1) were incurred in connection with a trade or business; (2) were incurred while away from home; and (3) were reasonable and necessary." *Morey v. Dept. of Rev.*, 18 OTR 76, 80-81 (2004) (citation omitted). For a taxpayer to be considered "away from home" within the meaning of IRC section 162(a)(2), the taxpayer must be on a trip requiring sleep or rest. *United States v. Correll*, 389 US 299, 302-03, 88 S Ct 445, 19 L Ed 2d 537 (1967).

The question in this case is whether Stephen was "away from home" for purposes of IRC section 162(a)(2). Plaintiffs contend that Stephen's tax home was his personal residence in Redmond, whereas Defendant concluded that Stephen's tax home was the Eugene metropolitan area, where he had a number of jobs in 2011.

"In general, a taxpayer's home for the purposes of section 162(a)(2)—*i.e.*, the taxpayer's 'tax home'—is the taxpayer's principal place of business or employment." *Morey*, 18 OTR at 81 (citation omitted); *see also Henderson v. Comm'r*, 143 F3d 497, 499 (9th Cir 1998) (" 'home' means 'the taxpayer's abode at his or her principal place of employment.' "). "[A] person's principal place of business need not be limited to a specific location or job site. A principal

place of business may include an entire metropolitan area. Rather than looking at particular jobs, all of the job prospects in the area must be considered." *Hintz v. Dept. of Rev.*, 13 OTR 462, 467 (1996), citing *Ellwein v. United States*, 778 F2d 506, 510 (8th Cir 1985). "If a taxpayer has no regular or principal place of business, he may be able to claim his place of abode as his tax home." *Henderson*, 143 F3d at 499, citing *Holdreith v. Comm'r*, 57 TCM (CCH) 1383, 1989 WL 97400 (1989). "[T]he taxpayer's personal residence is the individual's tax home if the principal place of business is 'temporary' as opposed to 'indefinite' or 'indeterminate.' " *Morey*, 18 OTR at 81 (citations omitted). However, under IRC section 162(a), "any employment period in excess of one year is *per se* indefinite." *Id.*

In *Morey*, the taxpayer was a pipefitter who had jobs in the following locations during the 1997 and 1998 tax years: Aloha, Coos Bay, Eugene (three jobs), and Hillsboro. 18 OTR at 78. The taxpayer maintained his personal residence and a ranch in Coquille. *Id.* at 79. The court considered three different standards for determining whether the taxpayer was "away from home" and, ultimately, found that the taxpayer's tax home was Eugene for the duration of his three jobs in Eugene and also during his job in Hillsboro. *Id.* at 87. Based on that finding, the court allowed a deduction for the taxpayer's business travel from Eugene to Hillsboro during the Hillsboro job. *Id.*

As noted above, Plaintiffs contend that Stephen had no principal place of business so his tax home was his personal residence in Redmond. Erin testified that Stephen has had jobs in Oregon, Washington, Idaho, Nevada, and Utah. The evidence presented for the 2011 tax year demonstrates that Stephen accepted employment with ADEX in April 2011. The ADEX Employment Agreement did not specify an end date and Stephen continued working for ADEX until April or May 2012. Thus, the court finds that Stephen's job with ADEX was indefinite.

ADEX's yard was located in Eugene. ADEX sent Stephen to work at various job sites in 2011. According to Stephen's log, those job sites were located in Cottage Grove, Eugene, Albany, Springfield, Corvallis, Veneta, and Leaburg. Defendant concluded that, with the exception of job sites in Albany and Corvallis, all of Stephen's job sites were located in the Eugene metropolitan area. The court agrees and finds that Stephen's principal place of business in 2011 was the Eugene metropolitan area. Accordingly, Plaintiffs may not deduct traveling expenses associated with traveling between Redmond and Eugene. However, Plaintiffs may deduct traveling expenses associated with traveling between Eugene and locations outside of the Eugene metropolitan area, such as Corvallis and Albany.

Stephen's deductible traveling expenses potentially include his truck mileage associated with business travel outside of the Eugene metropolitan area, as well as meals and lodging for overnight business travel outside of the Eugene metropolitan area. Although several entries in Stephen's log are associated with Albany and Corvallis, the court is unable to determine Stephen's deductible truck mileage based on his travel log.

With respect to meals and lodging, it is unclear whether Stephen traveled outside of the Eugene metropolitan area for any trips requiring sleep or rest. Plaintiffs relied on federal *per diem* rates for Eugene/Lane County to calculate their claimed deductions for meals and lodging. That suggests that Stephen's overnight travel was confined to the Eugene metropolitan area and Plaintiffs are not, therefore, allowed any deduction for lodging and meals because Stephen was not considered "away from home" in Eugene. Furthermore, Plaintiffs are not permitted to use the federal *per diem* rates to substantiate Stephen's lodging and they did not substantiate a

/ / /

/ / /

lodging expense by adequate records under IRC section 274(d).[4] Plaintiffs' deductions for meals and lodging are denied.

C.    *Business Use of Van*

In 2011, Stephen had a "bucket van" that he used for "aerial work" and he received lease payments from ADEX for the use of his van on ADEX jobs. Stephen drove the van to job sites when necessary, but did not use it to drive home on weekends or for other personal purposes. Defendant's conference officer determined that Stephen's van was a "qualified nonpersonal use vehicle" for purposes of the "exception to the strict documentary and substantiation requirements," but declined to allow any deduction for Stephen's van because his "log did not indicate whether [he] was driving [his] truck or van[.]" (Ptfs' Ex 26 at 3.) Helt testified that he agreed that Stephen's van was used 100 percent for business, but did not allow any mileage deduction for the van because he determined any mileage was personal commuting mileage.

IRC section 274(d) requires substantiation "by adequate records or by sufficient evidence corroborating the taxpayer's own statement" with respect to traveling expenses, entertainment, gifts, and listed property under section 280F(d)(4). It further states, "[t]his subsection shall not apply to any qualified nonpersonal use vehicle (as defined in subsection (i))." IRC section 274(i) states, "[f]or purposes of subsection (d), the term 'qualified nonpersonal use vehicle' means any vehicle which, by reason of its nature, is not likely to be used more than a de minimis amount for personal purposes."

There is no dispute in this case that Stephen's van was a qualified nonpersonal use vehicle and that he used it 100 percent for business in 2011. Plaintiffs are entitled to a deduction

---

[4] "[U]se of the per-diem method to substantiate the amount of lodging * * * is available only where employers pay a per-diem allowance in lieu of reimbursing the actual expenses an employee incurs while traveling away from home." *Duncan v. Comm'r*, 80 TCM (CCH) 283, WL 1204820 at *3 (2000); *see also* Rev. Proc. 2011-47, 2011-42 IRB 520.

for Stephen's 2011 van mileage, assuming the amount of mileage can be determined. The deduction need not be substantiated in accordance with the strict substantiation requirements of IRC section 274(d). Plaintiffs submitted evidence that the van odometer was 115,589 both at the beginning of 2011 and in April 2011 when he started working for ADEX. They submitted evidence that the van odometer was 120,502 at the end of 2011, for a total of 4,913 miles. Plaintiffs are allowed a mileage deduction for 4,913 miles for Stephen's business use of the van.

C.    *Other Business Expenses*

Plaintiffs claimed deductions for Stephen's tools, a portion of Plaintiffs' cell phone expenses, a portion of Plaintiffs' internet expenses, Stephen's vehicle wash expenses, and his laundry expenses. Plaintiffs' deduction for Stephen's tools was allowed by Defendant.

1.    *Cell phone expenses*

As discussed above, "listed property" under IRC section 280F(d)(4) is subject to the strict substantiation requirements of IRC section 274(d). As of the 2011 tax year, cell phones were not included as "listed property." *See* IRC § 280F(d)(4).[5] Thus, Plaintiffs were not required to maintain a log or similar record of Stephen's cell phone use. The court is permitted under the *Cohan* rule to make an approximation of Plaintiffs' allowed deduction, but the estimate must have a reasonable evidentiary basis.

Plaintiffs reported that their total monthly cell phone expenses for a family plan were in the range of $127 to $131. Of that amount, Plaintiffs allocated $35 per month for Stephen's business use, which is slightly more than 25 percent of the total. Plaintiffs provided no 2011 cell phone bills or similar documents to substantiate their total cell phone bill. Erin testified that Stephen used his cell phone both to communicate with his employer and with his family. That

---

[5] For tax years 2009 and prior, "cellular phones" were listed property under IRC section 280F(d)(4).

indicates a mixed business and personal use of the cell phone. The court finds that Plaintiffs have not provided sufficient evidence of their total cell phone expense in 2011 or of a reasonable business allocation of the total amount. Plaintiffs' cell phone expense deduction is denied.

2. *Internet expenses*

"A taxpayer may deduct the cost of home internet service pursuant to section 162 if the expense is ordinary and necessary in the taxpayer's trade or business. * * * To the extent that the taxpayer's home internet expense is attributable to nonbusiness use, it constitutes a nondeductible personal expense. * * * [H]ome internet expenses are not subject to the strict substantiation rules of section 274(d)." *Noz v. Comm'r*, 104 TCM (CCH) 350, WL 4344158 at *8 (2012) (citations omitted).

Plaintiffs reported that their total home internet expenses were $30 per month in 2011.[6] Plaintiffs allocated $10 per month, or 33.3 percent, to Stephen's business use. Stephen's business use of the internet in 2011 included job hunting while he was unemployed and submitting weekly timesheets while he was employed for ADEX. Plaintiffs presented no evidence or testimony regarding Stephen's use of the internet to search for work in 2011. The court did not receive any evidence of Plaintiffs' total home internet expenses in 2011. Even if the court accepts Plaintiffs' estimate of $30 per month, use of home internet once per week to submit a timesheet does not support a 33.3 percent business deduction of that expense. Plaintiffs' internet expense deduction is denied.

/ / /

/ / /

---

[6] Plaintiffs provided three CenturyLink bills from 2012, 2013, and 2014, showing payments of $25.00, $25.94, and $34.35, respectively. (Ptfs' Ex 30 at 2-4.) The bills do not specify the service received, but are presumably for Plaintiffs' home internet. (*See id.*) No other evidence of this expense was provided.

3.      *Laundry expenses and vehicle wash expenses*

Expenses for work clothes may be deductible under IRC section 162(a). "The generally accepted rule governing the deductibility of clothing expenses is that the cost of clothing is deductible as a business expense only if: (1) the clothing is of a type specifically required as a condition of employment, (2) it is not adaptable to general usage as ordinary clothing, and (3) it is not so worn." *Pevsner v. Comm'r*, 628 F2d 467, 469 (5th Cir 1980), citing *Donelly v. Comm'r*, 262 F2d 411, 412 (2nd Cir 1959); *see also Popov v. Comm'r*, 246 F3d 1190, 1192 n2 (9th Cir 2001).

Plaintiffs presented no evidence regarding Stephen's work clothes. It is unclear if he was required to wear a uniform or other specialized clothing not adaptable to general usage. Without that information, the court is unable to determine whether Plaintiffs are entitled to any deduction for laundry expenses. Moreover, Plaintiffs provided no evidence of their laundry expenses, instead relying upon an estimate of $105. Similarly, Plaintiffs provided no evidence of their vehicle wash expenses. Plaintiffs laundry and vehicle wash expense deductions are denied.

## III.  CONCLUSION

After careful consideration, the court finds that Stephen's 2011 tax home was the Eugene metropolitan area. Plaintiffs are entitled to deduct traveling expenses associated with Stephen's business travel outside of the Eugene metropolitan area. The parties shall confer and, within 14 days from the date of this Decision, submit a written stipulation with respect to Stephen's truck mileage for business travel outside of the Eugene metropolitan area.

The court finds that, as agreed by the parties, Stephen's van was a qualified nonpersonal use vehicle under IRC section 274(d) and (i). Plaintiffs are allowed a mileage deduction for Stephen's van based on 4,913 miles.

The court finds that Plaintiffs have failed to prove their entitlement to any deductions for lodging, meal, cell phone, home internet, laundry, or vehicle wash expenses. Now, therefore,

IT IS THE DECISION OF THIS COURT that, for the 2011 tax year, Stephen Cruthirds' tax home was the Eugene metropolitan area. Plaintiffs are entitled to deduct traveling expenses associated with Stephen's business travel outside of the Eugene metropolitan area. The parties shall confer and, within 14 days from the date of this Decision, submit a written stipulation with respect to Stephen's truck mileage for business travel outside of the Eugene metropolitan area.

IT IS FURTHER DECIDED that, as agreed by the parties, Stephen's van was a qualified nonpersonal use vehicle under IRC section 274(d) and (i). Plaintiffs are allowed a mileage deduction for Stephen's van based on 4,913 miles for the 2011 tax year.

IT IS FURTHER DECIDED that Plaintiffs have failed to prove their entitlement to any deductions for lodging, meal, cell phone, home internet, laundry, or vehicle wash expenses for the 2011 tax year.

Dated this ＿＿ day of June 2016.

 

 

 

ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on June 9, 2016.*