IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| JAYSON C. WALDRON | ) | |
| and VALERIE D. WALDRON, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 150538N |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION**[1] |

Plaintiffs appealed Defendant's Notice of Deficiency Assessment dated September 29, 2015, for the 2011 tax year and Defendant's Notices of Assessment dated December 7, 2015, for 2012 and 2013 tax years. A trial was held in the courtroom of the Oregon Tax Court, in Salem, Oregon, on July 27, 2016. Lance Brant, CPA, appeared on behalf of Plaintiffs. Plaintiff Jayson C. Waldron (Waldron), and Jonsi Wangler (Wangler), CPA, testified on behalf of Plaintiffs. Melinda Emerson and Bruce McDonald, Tax Auditors, appeared on behalf of Defendant. Plaintiffs' Exhibits 1 to 46 and Defendant's Exhibit A to H were received without objection.

/ / /

/ / /

---

[1] This Final Decision incorporates the court's Decision, entered January 23, 2017. In that Decision, the court directed the parties to confer to determine Plaintiffs' mileage and meals for the 2012 and 2013 tax years based on the court's tax home determination. The court further directed the parties to confer to determine the percentage of Waldron's business use of his travel trailer for the 2011, 2012, and 2013 tax years based the court's tax home determination. The court allowed the parties 30 days to jointly file their calculations. On February 22, 2017, Defendant filed a Status Report presenting its calculations. Defendant reported that it was unable to reach an agreement with Plaintiffs' authorized representative. Plaintiffs did not file any response to the court's Decision. Defendant's calculations are hereby adopted and incorporated into this Final Decision.

The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule-Magistrate Division (TCR-MD) 16 C(1).

## I.  STATEMENT OF FACTS

This matter concerns deductions for Waldron's unreimbursed employee business expenses during 2011, 2012, and 2013.  After Defendant opened an audit of those three tax years, Plaintiffs prepared an amended return for each tax year that represents their revised position for that year.  (*See* Ptfs' Ex 2, 21, 32.)  During trial, Plaintiffs corrected a few more errors in their amended returns and submitted Amended Exhibit 1 listing their claimed amounts for each tax year.  Also during trial, the parties stipulated to deductions for lodging and union dues for each of the tax years at issue.  A portion of Plaintiffs' claimed lodging deduction remains at issue for the 2012 tax year based on alleged cash payments by Waldron for a motel in Condon.  The following chart lists amounts claimed by Plaintiffs and allowed by Defendant:

|  | 2011 | | 2012 | | 2013 | |
|---|---|---|---|---|---|---|
|  | Ptfs | Def | Ptfs | Def | Ptfs | Def |
| Meals | $6,426 | $4,032[2] | $5,141 | | $5,410 | |
| Clothing | $510 | | $532 | | $-0- | |
| Union Dues | $2,612 | $2,612 | $2,810 | $2,810 | $2,482 | $2,482 |
| Cell Phone | $600 | | $1,058 | | $1,037 | |
| Tools | $-0- | | $250 | | $-0- | |
| Business Mileage | 21,128 | 9,218 | 32,941 | | 24,681 | |
| Mileage Deduction | $11,225 | | $18,282 | | $13,945 | |
| Lodging | $1,849 | $1,849 | $2,407 | $1,658 | $1,306 | $1,306 |
| Trailer Depreciation | $2,026 | | $3,471 | | $2,479 | |
| Total | $25,248 | | $33,951 | | $26,659 | |

(Ptfs' Am Ex 1 at 1; Def's Ex C at 4; Def's Ex F at 2.)

With respect to business mileage, Defendant determined Plaintiffs are entitled to a deduction based on 9,218 miles for the 2011 tax year.  (*See* Def's Ex C at 4.)  Defendant's calculation is based upon its position that Waldron's principal place of business and tax home was the Portland metropolitan area in 2011.  Defendant treated all 2011 mileage from Bend to

---

[2] Defendant determined allowable meals as follows:  72 days x $56 per diem = $4,032.  (Def's Ex F at 2.) 50 percent of that amount is $2,016.  (*Id.*)

Portland, from Bend to Salem, and from Salem to Portland as personal commuting mileage.  The court is not aware of a similar calculation Defendant has made for the 2012 and 2013 tax years.

A.      *Employment*

Waldron testified that he has been as a carpenter and mechanic for 12 years and he belongs to a union, Local 701, in Portland, Oregon.  (*See* Ptfs' Ex 45.)  He testified that, during the tax years at issue and subsequently, he worked for Axis Crane LLC (Axis).  (*See* Ptfs' Exs 12, 45.)  Waldron testified that, during the 2011 tax year, he was employed as a "union pile buck" to build "temporary bridges, drive pile, and build cranes[,]" and could be dispatched to anywhere in Oregon and Washington.  (*Id.*)  He testified that, in 2012 and 2013, he was on call 24 hours per day.

Waldron testified that Axis had an office in Hubbard, Oregon, and a few other locations. (*See* Ptfs' Ex 45.)  One of Axis' yards was located in Sherwood, Oregon, during the tax years at issue.  (*See* Ptfs' Ex 12.)  Waldron testified that he sometimes went to the Axis yard to get materials and equipment for welding or bridge construction.  He testified that he sometimes assembled cranes at the yard and performed maintenance at his job sites.  Waldron testified that he only had to go to the yard once per week or so.  He testified that whether he went to the yard depended on whether he was dispatched to a new type of job.

Waldron testified that neither Axis nor the union required him to live in Portland or any other location.  He testified that he had no business reason to live in any particular location. Waldron's "daily assignments [were] dispatched from Axis Crane to him via text and/or email." (Ptfs' Ex 45.)  Waldron testified that his home was in Bend and he worked from his home office, which was a desk in his living room with a portable printer.  He testified that he had daily paperwork he completed at his home office and received dispatches at his home office.  Waldron

testified that he did not have a letter from Axis stating that his home office was required. He testified that he did not have any documentation listing the hours he worked from home, but maintained that he would have reported those hours to Axis and received compensation. Waldron testified that did not have a desk at any of the Axis locations.

Waldron testified that he received "zone pay" that was intended to cover costs associated with travel away from home. (*See* Ptfs' Ex 42.) He testified that he received "zone pay" for any work more than 35 miles from the Axis yard in Sherwood. Waldron testified that, presumably, he received no "zone pay" for job sites within 35 miles of the Axis yard. A letter dated April 17, 2015, from Kimberly Sargent (Sargent), Assistant Controller of Axis, states that Axis

> "provides for 'Zone Pay' to employees who travel out of Axis Crane's home zone, for business purposes and for a duration involving an overnight stay. 'Zone Pay' for such purposes is $6 per hour of work time. 'Zone Pay' is meant to pay for Meals and Lodging while the employee is working away from home."

(*Id.*) Waldron testified that the "zone pay" was included as wages, so it was taxed.

B.    *Job Locations*

For each of the tax years at issue, Waldron provided a log of all of his "out of town" job locations and dates. (Ptfs' Exs 6, 28, 37.) He also provided letters from Axis confirming the accuracy of his job locations logs. (Ptfs' Ex 6 at 8, 37 at 1; Ex 44.) The letters from Axis do not clearly identify the year to which they pertain, but Waldron testified that he provided the logs to Sargent, who reviewed the logs and signed the letters.

Consistent with Waldron's testimony, his logs reveal job locations all over Oregon and Washington during the three tax years at issue. Waldron testified that he had two or three jobs in Bend from 2011 through 2013. However, his logs reveal only one job in Bend that lasted for one day in 2012. (*See* Ptfs' Ex 28 at 14; *see also* Def's Ex D at 1.)

/ / /

Waldron testified that he considered himself "out of town" when he was away from his home in Bend. According to his logs, Waldron worked "out of town" 216 days in 2011, 226 days in 2012, and 227 days in 2013. (*See* Ptfs' Exs 6, 28, 37; Def's Ex D at 1.) Defendant considered Waldron "out of town" when he worked outside of the Portland metropolitan area. (*See* Def's Ex D at 1.) Based on Waldron's logs, Defendant calculated that he worked in the Portland metropolitan area 47 days in 2011, 69 days in 2012, and 102 days in 2013. (*Id.*)

C.      *Travel Expenses*

Waldron testified that he would travel to his various job sites in his truck; he had to bring his own tools and equipment. He provided mileage logs[3] for each of the tax years at issue.[4] (Def's Ex C (2011); Ptfs' Ex 27 (2012); and Ptfs' Ex 37 (2013).) Wangler testified that Waldron's mileage was all calculated starting from his home office in Bend. (*See* Def's Ex C at 21 (Bend to Sherwood is 166 miles).) She testified that, on some days, Waldron drove from Sherwood to Hubbard and back, and then stayed in Salem. (*See, e.g.,* Ptfs' Ex 37 at 6.) Waldron testified that it is 82 miles round trip from Salem to the Sherwood yard. (*See, e.g.,* Def's Ex C at 5.) According to his mileage logs, Waldron went to Sherwood at least 65 days in 2011; at least 105 days in 2012; and at least 64 days in 2013. (*See* Def's Ex C.) Waldron testified that he would not typically work in the Sherwood yard; he would report to the yard and then go elsewhere.

Based on its determination that Waldron's tax home was the Portland metropolitan area (including the Sherwood yard), Defendant determined that he should be allowed 9,218 miles for

---

[3] For the 2011 tax year, Waldron provided a photocopy of his handwritten mileage log. (*See* Def's Ex C.) For the 2012 and 2013 tax year, he provided typewritten spreadsheets. (Ptfs' Ex 27, 37.) Waldron testified that the spreadsheets were prepared based on his handwritten notebooks.

[4] Waldron also provided a summary page listing his odometer mileage as follows: 21,128 in 2011; 24,946 in 2012; and 32,750 in 2013. (Ptfs' Ex 13.) With the exception of 2011, those figures do not match the requested mileage listed on Plaintiffs' Amended Exhibit 1 at 1, set forth above.

travel to out of town job sites in 2011. (*See* Def's Ex C at 4.) Defendant did not provide a similar analysis and calculation of Waldron's 2012 and 2013 mileage. (*See id.*)

Waldron testified that, when he traveled away from home to job sites, he either brought his travel trailer with him to sleep in or he stayed in a motel. He testified that the majority of nights he used his trailer. Waldron testified that, during the tax years at issue, he sometimes parked his trailer at his friends' houses that were located near his job sites. He testified that he had one such friend in Salem, Oregon. Waldron provided a document listing the dates and locations that he stayed either in his trailer or in a motel during 2011, with a total of 127 such days. (Ptfs' Ex 7.) That list does not include any dates he stayed in Salem. (*See id.*) No similar documents were provided for 2012 and 2013, but Wangler testified that she calculated Waldron was away from home 227 nights in 2013 based on his job site log from 2013. (*See* Ptfs' Ex 37 at 12–21.) Waldron provided lists of the numbers of days he used the trailer for personal use: 15 days in 2011; 12 days in 2012; and 10 days in 2013. (Ptfs' Exs 4, 25, 36.)

Waldron testified that he thought the trailer he used and depreciated during the tax years at issue was a Layton travel trailer, but he was not certain because he had two trailers in four years. (*See* Def's Ex E.) He bought the Layton travel trailer for $15,750 in February 2011. (*See* Ptfs' Ex 2 at 21 (depreciation schedule); *see also* Ptfs' Ex 16 (bill of sale).) Waldron testified that he determined 90 percent of his use of the trailer was business use and took depreciation based on that determination.

Waldron testified that he took 50 percent of allowed meals expenses when he was traveling out of town. Plaintiffs' Amended Exhibit 1 indicated that he used a rate of $59 per day. Defendant used a per diem rate of $56 multiplied by 72 days away from home, for a total of $4,032. (Def's Ex F at 2.) Defendant calculated 50 percent of that amount is $2,016. (*Id.*)

D.      *Other Business Expenses: Cell Phone, Clothing, Tools*

Waldron testified that he was required to carry a cell phone for work.  He testified that he received emails with dispatches, some of which were 40 to 50 pages long.  Waldron testified that he deducted 50 percent of his cell phone bills.  (*See* Ptfs' Ex 41.)  Plaintiffs provided a packet of Verizon statements from 2012 and 2013 showing they paid approximately $180 per month in 2013 and approximately $176 per month in 2012.[5]  The plan included two lines.  (*See id.*)

Waldron testified that he was a certified welder in 2011 and 2012, so he was allowed a deduction for work clothes in those years.  He did not take a clothing deduction in 2013.

Waldron claimed a deduction of $250 for tools in 2012.  (Ptfs' Am Ex 1 at 1.)  According to a letter from Sargent, Waldron had a right to reimbursement for "purchases for the convenience of the company with their own funds."  (Ptfs' Ex 42.)  A separate letter from Sargent stated that Waldron was reimbursed $671.91 in 2012 and $307.50 in 2013 "for expenses incurred during the course of work, purchases made for equipment and/or tools."  (Ptfs' Ex 43.)

## II. ANALYSIS

The issue presented is the amounts of the deductions for unreimbursed employee business expenses that Plaintiffs are allowed for the 2011, 2012, and 2013 tax years.

The Oregon Legislature intended to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code [IRC] relating to the measurement of taxable income of individuals, estates and trusts, modified as necessary by the state's jurisdiction to tax and the revenue needs of the state[.]"  ORS 316.007(1).[6]  "Any term used in this chapter has the same meaning as when used in a comparable context in the laws of

---

[5] The totals varied due to taxes, roaming fees, and various surcharges.  (*See* Ptfs' Ex 41.)

[6] The court's references to the Oregon Revised Statutes (ORS) are to 2011.  Although the 2009 ORS are applicable for the 2011 tax year, there is no material difference between the 2009 and 2011 versions of the ORS sections cited in this Decision.

the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined in this chapter." ORS 316.012. On the issue presented in this case, "Oregon law makes no adjustments to the rules under [the IRC] and therefore, federal law governs the analysis." *See Porter v. Dept. of Rev.*, 20 OTR 30, 31 (2009).

IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" "To be 'necessary[,]' an expense must be 'appropriate and helpful' to the taxpayer's business. * * * To be 'ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r*, 83 TCM (CCH) 1253, WL 236685 at *2 (2002) (internal citations omitted). IRC section 262 generally disallows deductions for "personal, living, or family expenses" not otherwise expressly allowed under the IRC. Services performed by an employee constitute a trade or business for purposes of IRC section 162. *See O'Malley v. Comm'r*, 91 TC 352, 363–64 (1988).

Taxpayers must be prepared to produce "any books, papers, records or memoranda bearing upon [any] matter required to be included in the return[.]" ORS 314.425(1); *see also Gapikia v. Comm'r*, 81 TCM (CCH) 1488, WL 332038 at *2 (2001) ("[t]axpayers are required to maintain records sufficient to substantiate their claimed deductions"). Generally, if a claimed business expense is deductible, but the taxpayer is unable to substantiate it fully, the court is permitted to make an approximation of an allowable amount. *Cohan v. Comm'r*, 39 F2d 540, 543–44 (2nd Cir 1930). The estimate must have a reasonable evidentiary basis. *Vanicek v. Comm'r*, 85 TC 731, 743 (1985). IRC section 274(d) supersedes the *Cohan* rule and imposes more stringent substantiation requirements for travel, meals, entertainment, gifts, and listed property under IRC section 280F(d)(4). Treas Reg § 1.274-5T(a).

Deductions are "a matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the deductions claimed. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. Plaintiffs must establish their claim "by a preponderance of the evidence[,]" which "means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). "In an appeal to the Oregon Tax Court from an assessment made under ORS 305.265, the tax court has jurisdiction to determine the correct amount of deficiency * * *." ORS 305.575.

A.      *Traveling Expenses, Tax Home*

Plaintiffs deducted expenses for Waldron's travel, including mileage, lodging, meals, and depreciation of his travel trailer. A taxpayer may deduct "traveling expenses * * * while away from home in the pursuit of a trade or business[.]" IRC § 162(a)(2). "The purpose of IRC section 162(a)(2) is to ameliorate the effects of business which requires taxpayers to duplicate personal living expenses." *Harding v. Dept. of Rev.*, 13 OTR 454, 458 (1996). "Consequently, courts must determine whether the claimed expense is actually required by the business rather than by the taxpayer's personal choice." *Id.* To deduct travel expenses under IRC section 162(a)(2), taxpayers must show that the expenses "(1) were incurred in connection with a trade or business; (2) were incurred while away from home; and (3) were reasonable and necessary." *Morey v. Dept. of Rev. (Morey)*, 18 OTR 76, 80–81 (2004) (citation omitted). For a taxpayer to

be considered "away from home" within the meaning of IRC section 162(a)(2), the taxpayer must be on a trip requiring sleep or rest. *United States v. Correll*, 389 US 299, 302–03, 88 S Ct 445, 19 L Ed 2d 537 (1967).

"In general, a taxpayer's home for the purposes of section 162(a)(2)—*i.e.*, the taxpayer's 'tax home'—is the taxpayer's principal place of business or employment." *Morey*, 18 OTR at 81 (citation omitted); *see also Henderson v. Comm'r (Henderson)*, 143 F3d 497, 499 (9th Cir 1998) (" 'home' means 'the taxpayer's abode at his or her principal place of employment.' "). "[A] person's principal place of business need not be limited to a specific location or job site. A principal place of business may include an entire metropolitan area. Rather than looking at particular jobs, all of the job prospects in the area must be considered." *Hintz v. Dept. of Rev.*, 13 OTR 462, 467 (1996), citing *Ellwein v. United States*, 778 F2d 506, 510 (8th Cir 1985). "If a taxpayer has no regular or principal place of business, he may be able to claim his place of abode as his tax home." *Henderson*, 143 F3d at 499, citing *Holdreith v. Comm'r*, 57 TCM (CCH) 1383, 1989 WL 97400 (1989). "[T]he taxpayer's personal residence is the individual's tax home if the principal place of business is 'temporary' as opposed to 'indefinite' or 'indeterminate.' " *Morey*, 18 OTR at 81 (citations omitted). However, under IRC section 162(a), "any employment period in excess of one year is *per se* indefinite." *Morey*, 18 OTR at 81.

1.    *Principal place of business*

Plaintiffs contend that Waldron's principal place of business and tax home was his personal residence in Bend. IRC section 280A(a)[7] generally prohibits any deduction "with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a

---

[7] The court considers whether Waldron's home office was his principal place of business even though he did not claim a deduction for his home office. *See Bogue v. Comm'r*, 102 TCM (CCH) 41, WL 2709818 at *7 (2011) ("although petitioner did not claim a deduction for the business use of his residence pursuant to section 280A(c)(1), we nonetheless must consider whether petitioner's office in his residence qualifies as his principal place of business under that statute").

residence." IRC section 280A(c)(1) provides several exceptions to that general rule for the

taxpayer's business use of a dwelling unit. One such exception is for "a portion of the dwelling

unit which is exclusively used on a regular basis * * * as the principal place of business for any

trade or business of the taxpayer[.]" IRC § 280A(c)(1)(A).

> "For purposes of subparagraph (A), the term 'principal place of business' includes a place of business which is used by the taxpayer for the administrative or management activities of any trade or business of the taxpayer if there is no other fixed location of such trade or business where the taxpayer conducts substantial administrative or management activities of such trade or business."

IRC § 280A(c)(1). In the case of an employee, this exception applies only if the home office is

maintained for the convenience of his employer. *Id.*

Waldron testified that he performed job duties at his home office, which was a desk with

a portable printer in his living room. He testified that he was required to complete paperwork

and did so from his home office. Additionally, he received dispatches via email or text message,

sometimes at his home office. Waldron testified that Axis did not provide him with a desk in

any of its locations. Those facts tend to support a finding that Waldron's home was used for

some of the "administrative or management activities" of Waldron's business. However,

Waldron was an employee of Axis and, therefore, was required to demonstrate that his home

office was maintained for the convenience of his employer. Waldron failed to produce any

evidence on that point, such as a letter or a policy statement from Axis. The court is not

persuaded that Waldron's home office was his principal place of business.

Defendant contends that Waldron's principal place of business and tax home was the

Portland metropolitan area because Axis' yard was located in Sherwood and because Waldron

worked a significant number of days in the Portland metropolitan area. Specifically, Defendant

/ / /

calculated from Waldron's records that he worked in the Portland metropolitan area 47 days in 2011, 69 days in 2012, and 102 days in 2013.

For the following reasons, the court finds that Waldron's principal place of business and tax home was the Axis yard in Sherwood. First, based on the court's review of Waldron's mileage logs, he reported to the Sherwood yard at least 65 days in 2011; at least 105 days in 2012; and at least 64 days in 2013. Although Waldron was not required to report daily to the Sherwood yard, he testified that he went once per week or so to get materials and equipment for welding or bridge construction or to assemble cranes. Second, Axis treated the Sherwood yard as Waldron's home base and calculated his zone pay based on the distance of his travel from the yard. Waldron received zone pay only for job sites located 35 miles or more from the Axis yard.

2.    *Mileage*

Based on its determination that Waldron's tax home was Sherwood, the court finds that Waldron is permitted to deduct mileage for travel from the Sherwood yard to any other job site, as well as mileage associated with overnight travel to work sites distant from Sherwood. Waldron is *not* permitted to deduct mileage for travel from Bend to the yard in Sherwood or for travel between Salem and Sherwood. That travel was personal in nature and may not be deducted under IRC section 262.

Defendant calculated Waldron's mileage for the 2011 tax year to be 9,218 miles based on Defendant's determination that Waldron's tax home was the Portland metropolitan area. The court accepts Defendant's calculation as reasonable and consistent with the court's finding that Waldron's tax home was Sherwood. In its Status Report, filed February 22, 2017, Defendant agreed to allow Waldron 9,218 miles for both the 2012 and 2013 tax years. The court accepts as reasonable Defendant's mileage allowances for the 2012 and 2013 tax years.

3.    *Lodging*

The parties stipulated to Waldron's allowable lodging expenses for the 2011 and 2013 tax years, and partially stipulated to his allowable expenses for the 2012 tax year. Defendant agreed to allow $1,658 out of $2,407 claimed for the 2012 tax year. The difference is attributable to Waldron's claimed cash payments for lodging in Condon, Oregon, in 2012. As discussed above, travel expenses are subject to the strict substantiation requirements of IRC section 274(d). To substantiate travel expenses, the taxpayer must prove the expenditure amount, the time, the place, and the business purpose of the travel. Treas Reg § 1.274-5T(b)(2). Waldron's claimed payments were made in cash and he failed to provide receipts or other similar evidence to substantiate those payments. Waldron failed to present sufficient evidence of his lodging expenses beyond what Defendant allowed for the 2012 tax year.

4.    *Trailer*

Waldron testified that he often stayed in his travel trailer at job sites rather than renting a hotel room. He took depreciation for his trailer based on his calculated percentage of business use. IRC section 167(a) allows a depreciation deduction from gross income "of property used in the trade or business." Certain types of property are defined by the IRC as "listed property," including "any property of a type generally used for purposes of entertainment, recreation, or amusement[.]" IRC § 280F(d)(4). The use of listed property in connection with services as an employee is not treated as use in a trade or business "unless such use is for the convenience of the employer and required as a condition of employment." IRC § 280F(d)(3).

Case law illustrates the contours of the allowable depreciation deduction for employees' use of listed property. In *Noyce v. Comm'r*, 97 TC 670, 690–91 (1991), the court allowed an executive depreciation for his private jet to the extent it was used in his employment. The court

allowed the deduction even though the executive's employer would have reimbursed him for commercial flights. The flexible scheduling and the possibility of direct flights using the private jet allowed the executive to attend more meetings in the service of his employer than he otherwise could have, and the parties stipulated that "replication of petitioner's private airplane flights through a commercial service would have been more costly." *Id.* at 688. In *Cadwallader v. Comm'r*, 57 TCM (CCH) 1030 (1989), the court allowed a professor depreciation on a computer that "substantially aided" his research. However, in *Hixson v. Comm'r*, 38 TCM (CCH) 1155 (TC 1979), the court disallowed depreciation on a travel trailer because it was used only at taxpayer's tax home, which was a purely personal use.

The court is persuaded that Waldron used his trailer for business when he traveled to distant job sites and stayed in the trailer as an alternative to renting a motel room. Although Waldron was not specifically required by his employer to use his trailer, he *was* required to report to job sites, sometimes for multiple days. There is no dispute that Waldron would be permitted to deduct lodging expenses for travel to those job sites and the court finds that use of his trailer was a reasonable alternative to renting a motel room.

The next question is the appropriate allocation between Waldron's business and personal use of the trailer. Waldron provided a list of dates and locations that he used his travel trailer for business in 2011. The court finds Waldron used his trailer for business in 2011 as follows:

| Month | Claimed | Allowed | Comment |
|---|---|---|---|
| January | 0 | 0 | |
| February | 0 | 0 | |
| March | 3 | 3 | |
| April | 12 | 11 | Vancouver, WA is within Portland metro. |
| May | 4 | 3 | Vancouver, WA is within Portland metro. |
| June | 10 | 10 | |
| July | 18 | 18 | |
| August | 18 | 18 | |
| September | 9 | 9 | |

| | | | |
|---|---|---|---|
| October | 7 | 6 | Vancouver, WA is within Portland metro. |
| November | 17 | Unclear | Both trailer and motel in Condon, OR. |
| December | 15 | Unclear | Both trailer and motel in Condon, OR. |
| Total | 113 | 78 | |

(*See* Ptfs' Exs 7, 15.)

Waldron reported 15 personal use days of the trailer in 2011. However, he did not include in that total any of the days that he used the trailer to stay in Salem, Oregon, or in the Portland metropolitan area. Waldron's use of the trailer to travel to the Sherwood yard or to other locations in the Portland metropolitan area is personal use based on the court's tax home finding. In its Decision, entered January 23, 2017, the court directed the parties to confer and determine the total number of days that Waldron used the trailer for business and the total number of days he used it for personal purposes. Neither party submitted a calculation as directed by the court. As a result, the court is unable to allow any amount of depreciation on Waldron's travel trailer.

5. *Meals*

Plaintiffs are allowed a deduction for meals on days that Waldron traveled away from his tax home on a trip requiring sleep or rest. Plaintiffs calculated allowable meals for each tax year based on their conclusion that Waldron's tax home was Bend, whereas Defendant calculated Plaintiffs' allowable meals deduction for the 2011 tax year based on its conclusion that Waldron's tax home was the Portland metropolitan area. Having found that Waldron's tax home was the Axis yard in Sherwood, the court agrees with Defendant's calculation for the 2011 tax year: Waldron is allowed total meals of $4,032 for the 2011 tax year, which must be reduced by 50 percent for a deduction of $2,016. In its Status Report, filed February 22, 2017, Defendant agreed that Waldron incurred total meal expenses of $7,314 for the 2012 tax year, resulting in a deduction of $3,657. For the 2013 tax year, Defendant agreed that Waldron incurred total meal

expenses of $6,026, resulting in a deduction of $3,013. The court accepts as reasonable Defendant's meal allowances for the 2012 and 2013 tax years.

B.      *Other Business Expenses*

1.      *Cell phone*

As discussed above, "listed property" under IRC section 280F(d)(4) is subject to the strict substantiation requirements of IRC section 274(d). As of the 2011 tax year, cell phones were no longer included as "listed property." *See* IRC § 280F(d)(4). Thus, Plaintiffs are not required to meet the strict substantiation requirements for Waldron's cell phone expense and the court may make an approximation of Plaintiffs' allowed deduction under the *Cohan* rule. However, the estimate must have a reasonable evidentiary basis. Plaintiffs determined that 50 percent of their cell phone expenses were attributable to business use and provided some billing statements from 2012 and 2013. Plaintiffs did not explain how they allocated their cell phone between business and personal use and the court was given no evidence from which it can make a reasonable estimate. Accordingly, Plaintiffs' claimed cell phone deductions are denied.

2.      *Clothes*

Expenses for work clothes may be deductible under IRC section 162(a). "The generally accepted rule governing the deductibility of clothing expenses is that the cost of clothing is deductible as a business expense only if: (1) the clothing is of a type specifically required as a condition of employment, (2) it is not adaptable to general usage as ordinary clothing, and (3) it is not so worn." *Pevsner v. Comm'r*, 628 F2d 467, 469 (5th Cir 1980), citing *Donnelly v. Comm'r*, 262 F2d 411, 412 (2nd Cir 1959); *see also Popov v. Comm'r*, 246 F3d 1190, 1192 n2 (9th Cir 2001). Plaintiffs presented no evidence of Waldron's work clothes expenses and failed

/ / /

to identify the items deducted beyond a reference to the fact that he was a certified welder during two of the tax years at issue. Plaintiffs' deductions for work clothes are denied.

3. *Tools*

Plaintiffs claimed a $250 deduction for tools for the 2012 tax year. Plaintiffs presented no evidence in support of that claimed deduction. Additionally, according to a letter from Sargent, Waldron had a right to reimbursement for "purchases for the convenience of the company with their own funds." (Ptfs' Ex 42.) A separate letter from Sargent stated that Waldron was reimbursed $671.91 in 2012 and $307.50 in 2013 "for expenses incurred during the course of work, purchases made for equipment and/or tools." (Ptfs' Ex 43.) It is unclear why Waldron's purchases of tools would not have been reimbursed by Axis based on the letters from Sargent. Plaintiffs' deduction for tools for the 2012 tax year is denied.

III. CONCLUSION

After careful consideration, the court finds that Waldron's tax home was Sherwood, Oregon for the 2011, 2012, and 2013 tax years. For each of those tax years, Plaintiffs are allowed deductions for union dues and lodging expenses as stipulated by the parties. (*See infra* at 2.) The court finds that Plaintiffs failed to substantiate any additional lodging deduction for the 2012 tax year. For the 2011 tax year, Plaintiffs are allowed a mileage deduction based on 9,218 business miles and a meal deduction of $2,016. For the 2012 tax year, Plaintiffs are allowed a mileage deduction based on 9,218 business miles and a meal deduction of $3,657. For the 2013 tax year, Plaintiffs are allowed a mileage deduction based on 9,218 business miles and a meal deduction of $3,013. The court directed the parties to confer to determine the percentage of Waldron's business use of the travel trailer for each year based on the court's tax home finding. Neither party submitted a calculation as directed by the court. As

a result, the court is unable to allow any depreciation on the travel trailer. The court further finds that Plaintiffs' deductions for cell phone expenses, work clothes, and tools must be denied. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is granted in part as set forth in this Final Decision.

IT IS FURTHER DECIDED that, for the 2011 tax year, Plaintiffs are allowed a mileage deduction based on 9,218 business miles, a lodging deduction of $1,849, a meals deduction of $2,016, and a union dues deduction of $2,612.

IT IS FURTHER DECIDED that, for the 2012 tax year, Plaintiffs are allowed a mileage deduction based on 9,218 business miles, a lodging deduction of $1,658, a meals deduction of $3,657, and a union dues deduction of $2,810.

IT IS FURTHER DECIDED that, for the 2013 tax year, Plaintiffs are allowed a mileage deduction based on 9,218 business miles, a lodging deduction of $1,306, a meals deduction of $3,013, and a union dues deduction of $2,482.

IT IS DECIDED that, for the 2011, 2012, and 2013 tax years, Plaintiffs' remaining deductions for unreimbursed employee business expenses are denied.

Dated this ____ day of March 2017.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on March 6, 2017.*