# United States Tax Court

T.C. Memo. 2022-123

KAMBIZ AYRIA,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 13745-20.                     Filed December 19, 2022.

————————

Kambiz Ayria, pro se.

*Hans Famularo* and *Stephen O. Abanise*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, *Judge*: With respect to petitioner's Federal income tax for 2017, the Internal Revenue Service (IRS or respondent) determined a deficiency of $30,077 and an accuracy-related penalty of $6,015. We held a trial to determine whether petitioner was entitled to deduct $86,925 of business expenses reported on Schedule C, Profit or Loss From Business. Answering this question in the negative, we will sustain the deficiency and most of the penalty.

## FINDINGS OF FACT

These findings are based on the parties' pleadings and the documents and testimony admitted into evidence at trial. Petitioner resided in Irvine, California, during the tax year at issue and when his Petition was timely filed.

Petitioner completed high school and received some college-level training. He has been involved in the automobile industry since 1982, mainly as a car salesman. He provided little detail about his pre-2017

[*2] career.  In 2017 he became the manager of a Honda dealership in Santa Monica, California.  He often worked 60 hours a week in that capacity.

During 2017 petitioner received wages of $295,693 as a salaried employee.  These wages were reported on a Form W–2, Wage and Tax Statement, issued to him by the dealership.  At issue in this case are deductions for expenses petitioner allegedly incurred in connection with his work for the dealership.  Petitioner contends that these expenditures enhanced his productivity and his ability to earn commissions.

Petitioner's home in Irvine was roughly 60 miles from the dealership.  To avoid lengthy commuting times he often spent weeknights at the Ocean View Hotel in Santa Monica.  He testified that staying overnight at the hotel not only saved him time but also facilitated community contacts in Santa Monica and dinners with clients.  To succeed as the manager of a car dealership, he said, "[y]ou got to do something above and beyond to take you to the next level."  Petitioner credibly testified that spending so many nights at the same hotel was "not fun," but it enabled him to work longer hours and "keep his job."

Petitioner allegedly used his personal automobile to transport Honda employees and clients to meetings, auctions, and other dealerships.  He allegedly made gifts to clients and used his personal cellphone and internet connection to help discharge his dealership responsibilities.  During his hotel stays he incurred expenses for dry cleaning of the clothes he wore to work.

Petitioner had his 2017 Form 1040, U.S. Individual Income Tax Return, prepared by a professional return preparer.  The return included a Schedule C that described petitioner's sole proprietorship activity as "consulting."  It reported gross receipts of $3,600 and claimed deductions of $86,925.  The evidence at trial established that petitioner did little if any "consulting" apart from whatever consulting he performed in his capacity as an employee of the Honda dealership.  All the expenses reported on his Schedule C, to the extent incurred, were actually incurred in connection with his work as manager of the dealership.

The Schedule C reported vehicle expenses of $15,896, allegedly incurred to transport clients, prospective clients, and employees of the dealership, and other expenses of $71,029.  The latter consisted of $40,174 for lodging and parking at the hotel, $22,141 for client entertainment, $4,010 for gifts to customers, $1,958 for cellphone expenses,

**[\*3]** $1,225 for internet service, and $1,521 for dry cleaning. Petitioner did not deduct any unreimbursed employee expenses on his Schedule A, Itemized Deductions.

The IRS selected petitioner's 2017 return for examination and proposed to disallow the Schedule C deductions in their entirety. The examination was conducted under the Correspondence Examination Automation Support (CEAS) program, which automatically calculated the deficiency and a penalty for a substantial understatement of income tax. *See* § 6662(b)(2), (d).[1] On November 18, 2019, CEAS sent petitioner a Letter 525–T setting forth the proposed adjustments, listing Revenue Agent (RA) Ramos as the person to contact. Three days previously, RA Ramos's immediate supervisor, Robert Morse, had supplied digital approval for assertion of the substantial understatement penalty. The Letter advised petitioner that he needed to contact the IRS before December 18, 2019, if he disagreed with the proposed changes.

Petitioner telephoned the IRS on December 3, 2019, and was told that he needed to supply additional documentation to substantiate items underlying his claimed deductions. The record does not establish whether petitioner submitted any additional information. On March 10, 2020, Mr. Morse again supplied digital approval for assertion of the substantial understatement penalty.

On September 28, 2020, the IRS mailed petitioner a timely notice of deficiency. The notice disallowed all of the claimed Schedule C deductions. It also made several computational adjustments (to itemized deductions, the personal exemption, and the alternative minimum tax) that are not in dispute.

We tried the case in Los Angeles on March 28, 2022. At the conclusion of trial we set a briefing schedule, which we later revised. Respondent timely filed his opening brief on July 26, 2022. Petitioner failed to file a brief by the due date or subsequently. Because he failed to file a brief, we could rule against him for that reason alone. *See* Rule 123. We will nevertheless decide the case on its merits.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

**[\*4]**                                        OPINION

A.     *Burden of Proof*

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving them erroneous. *See* Rule 142(a). Section 7491(a) provides that the burden of proof may shift to respondent if the taxpayer "introduces credible evidence with respect to [a relevant] factual issue" and satisfies three additional conditions. Petitioner does not contend section 7491(a) applies to shift the burden of proof.

B.     *Governing Legal Principles*

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving their entitlement to any deduction claimed. Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992). A taxpayer must show that he has met all requirements for each deduction and kept books or records that substantiate the expenses underlying it. § 6001; *Roberts v. Commissioner*, 62 T.C. 834, 836 (1974). Failure to keep and present such records counts heavily against a taxpayer's attempted proof. *Rogers v. Commissioner*, T.C. Memo. 2014-141, 108 T.C.M. (CCH) 39, 43.

Section 162(a) allows a deduction for "ordinary and necessary expenses paid or incurred . . . in carrying on any trade or business." Performing services as an employee may constitute a "trade or business." *See Primuth v. Commissioner*, 54 T.C. 374, 377 (1970). Whether an expenditure is "ordinary and necessary" is generally a question of fact. *Commissioner v. Heininger*, 320 U.S. 467, 475 (1943). To be "ordinary," the expense must be a common or frequent occurrence for the taxpayer's type of business. *Deputy v. DuPont*, 308 U.S. 488, 495 (1940). An expenditure is "necessary" if it is "appropriate and helpful" to the taxpayer's business," *Welch v. Helvering*, 290 U.S. 111, 113 (1933), but it must also be "directly connected with or pertaining to the taxpayer's trade or business," Treas. Reg. § 1.162-1(a). On the other hand, "personal, living, or family expenses" are not deductible. § 262(a).

Under *Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930), if a taxpayer claims a deduction but cannot fully substantiate the underlying expense, the Court in certain circumstances may approximate the allowable amount, "bearing heavily if it [so] chooses upon the taxpayer whose inexactitude is of his own making." The Court must have some factual basis for its estimate, however, else the allowance

[*5] would amount to "unguided largesse." *Williams v. United States*, 245 F.2d 559, 560 (5th Cir. 1957).

Section 274(d) sets forth heightened substantiation requirements (and overrides the *Cohan* rule) for certain types of expenses. As in effect during 2017, section 274(d) made these strict requirements applicable for "any traveling expense (including meals and lodging while away from home)," "any item with respect to an activity which is of a type generally considered to constitute entertainment," "any expense for gifts," and "any listed property (as defined in section 280F(d)(4))." "Listed property" was defined to include "any passenger automobile." § 280F(d)(4)(A)(i); Treas. Reg. § 1.280F-6(b)(1)(i).[2]

As in effect during 2017, section 274(d) provided that no deduction shall be allowed for the expenses set forth above "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement" the following facts:

(A) The amount of such expense or other item;

(B) The time and place of the travel or entertainment, or the date and description of the gift;

(C) The business purpose of the expense or other item; and

(D) The business relationship to the taxpayer of persons entertained or receiving the gift.

§ 274(d); *see* Temp. Treas. Reg. § 1.274-5T(c).

For expenses governed by section 274(d), "[w]ritten evidence has considerably more probative value than oral evidence," and "the probative value of written evidence is greater the closer in time it relates to the expenditure." Temp. Treas. Reg. § 1.274-5T(c)(1). Substantiation by "adequate records" generally requires the taxpayer to "maintain an account book, diary, log, statement of expense, trip sheets, or similar record," as well as evidence documenting the expenditures. *Id.* subpara. (2). To substantiate business use of vehicles an actual contemporaneous log is not strictly required, but records made at or near the time of the

---

[2] Section 274(d) was amended by the Tax Cuts and Jobs Act of 2017, Pub. L. No. 115-97, § 13304(a)(2)(A), 131 Stat. 2054, 2124. That amendment was effective for amounts paid or incurred after December 31, 2017. *Id.* § 13304(e), 131 Stat. at 2126.

[*6] expenditure have greater probative value than records created subsequently. *Id.* subparas. (1) and (2).

C.    *Analysis*

Petitioner confronts a threshold obstacle given the nature of the expenses in question.  Although these expenses were reported on a Schedule C in connection with an alleged consulting business, the evidence at trial established that petitioner did little if any "consulting" apart from advice he rendered to customers in his capacity as a Form W–2 employee of the Honda dealership.  He admitted at trial that all of the expenses listed on the Schedule C were actually incurred in connection with his work as the dealership's manager.

The expenses at issue would thus be deductible (if at all) only as unreimbursed employee expenses.  Such expenses are treated as "miscellaneous itemized deductions" under section 67(b), and they are deductible under section 67(a) "only to the extent that the aggregate of such deductions exceeds 2 percent of adjusted gross income." *See generally Knight v. Commissioner*, 552 U.S. 181, 184 (2008).

To be entitled to such deductions the employee must show that he was neither reimbursed nor entitled to be reimbursed for the expenses by his employer. *Orvis v. Commissioner*, 788 F.2d 1406, 1408 (9th Cir. 1986), *aff'g* T.C. Memo. 1984-533; *Leamy v. Commissioner*, 85 T.C. 798, 810 (1985); *Lucas v. Commissioner*, 79 T.C. 1, 7 (1982); *Spielbauer v. Commissioner*, T.C. Memo. 1998-80.  If the taxpayer's employer has a reimbursement policy that covers the expenses, the taxpayer must show that he sought reimbursement from his employer. *Orvis v. Commissioner*, 788 F.2d at 1408.  The taxpayer bears the burden of proving that he was not entitled to reimbursement. *See Fountain v. Commissioner*, 59 T.C. 696, 708 (1973).

Petitioner submitted no evidence as to whether the Honda dealership had a reimbursement policy for job-related employee expenses. If it did, he submitted no evidence that he sought reimbursement for any expenses that qualified for reimbursement.  He would thus fail to meet his burden of proof even if he could show that the expenditures were actually incurred, were "ordinary and necessary," and were otherwise allowable as deductions. *See* § 162(a).  But he failed to establish those facts as well.

**[\*7]**   1.    *Lodging in Santa Monica*

Petitioner substantiated at least $40,174 of expenses at the Santa Monica hotel. He elected to incur these expenses as an alternative to commuting from his home in Irvine, which was about 60 miles from the dealership. Given rush-hour traffic in Los Angeles, this may well have been a rational choice, but it was a personal choice.

It is well established that the expenses of commuting to and from work are not "ordinary and necessary" business expenses deductible under section 162. *Fausner v. Commissioner*, 413 U.S. 838, 838–39 (1973); *Commissioner v. Flowers*, 326 U.S. 465, 470 (1946); *Feistman v. Commissioner*, 63 T.C. 129, 134–35 (1974); Treas. Reg. §§ 1.162-2(e), 1.262-1(b)(5). That is because the decision about where to live is typically a personal decision, not a job requirement imposed by one's employer. *Commissioner v. Flowers*, 326 U.S. at 470–74. Petitioner's hotel expenses in Santa Monica were essentially a substitute for the expense of daily commuting from Irvine. Therefore, they were "personal, living, or family expense[s]" nondeductible under section 262. *See Daly v. Commissioner*, 72 T.C. 190, 196–98 (1979) (denying deduction for overnight lodging expenses in Philadelphia where sales manager commuted weekly to Philadelphia from his home in Virginia), *aff'd*, 662 F.2d 253 (4th Cir. 1981).

Petitioner's hotel expenses in Santa Monica may have been larger than the vehicle expenses he would otherwise have incurred by commuting daily. But that too was a personal decision, reflecting his disinclination to spend many hours on the road. And his lodging expenses cannot be rationalized as "traveling expenses . . . while away from home in the pursuit of a trade or business." *See* § 162(a)(2); *Commissioner v. Flowers*, 326 U.S. at 470. Petitioner's tax home was Santa Monica, his place of business, and he was not "away from home" when staying at the Ocean View Hotel. *See Coombs v. Commissioner*, 608 F.2d 1269, 1275 (9th Cir. 1979), *aff'g in part, rev'g and remanding in part* 67 T.C. 426 (1976); *Daly*, 72 T.C. at 196–97. We accordingly sustain disallowance of the $40,174 deduction for lodging expenses.

2.    *Vehicle Expenses*

Petitioner deducted $15,896 for car and truck expenses. Passenger vehicle expenses are subject to the strict substantiation requirements of section 274(d). Petitioner did not explain, either in his tax return or at trial, how this amount was calculated. He maintained no

[*8] odometer readings to keep track of mileage, and he kept no "trip sheets, or similar record" of his business-related travel. Temp. Treas. Reg. § 1.274-5T(c)(2). He admitted that he "didn't do a good job of logging" his travel but "just averaged things out basically, in a lump sum." We find that petitioner has not substantiated, "by adequate records or by sufficient evidence corroborating [his] own statement," the amount or business purpose of his reported vehicle expenses. *See* § 274(d). We accordingly sustain disallowance of the $15,896 deduction for car and truck expenses.

### 3. *Meals and Entertainment*

Petitioner deducted $22,141 for "client entertainment." He testified that these expenses were incurred for "entertaining our clients, taking them out for dinners and meet[ing] for drinks." Business entertainment expenses incurred during 2017 were subject to the strict substantiation requirements of section 274(d). By way of substantiation petitioner submitted bank and credit card statements showing roughly $25,000 of expenses at cafes, bars, and restaurants. These expenses were incurred, chiefly at locations in or near Santa Monica, on at least 200 separate occasions during 2017.

Petitioner submitted no evidence to show which (if any) of these expenses were incurred for business as opposed to personal purposes. He did not establish "the time and place of the [client] entertainment," "the business purpose of the expense," or the "business relationship to the taxpayer of [the] persons entertained." *See* § 274(d). We accordingly sustain disallowance of the $22,141 deduction for client entertainment expenses.

### 4. *Gifts*

Petitioner deducted $4,010 for "gifts to customers." He testified that these were "basically Christmas presents" and other gifts "once in a while here and there." Expenses for business gifts incurred during 2017 were subject to the strict substantiation requirements of section 274(d).

Petitioner could not identify any entries in his bank and credit card statements that could be linked to business gifts in the aggregate amount of $4,010 (or any other amount). He did not establish "the date and description of the gift," "the business purpose of the expense," or the "business relationship to [him] of [the] person . . . receiving the gift." *See*

**[*9]** *ibid.* We accordingly sustain disallowance of the $4,010 deduction for client gifts.

### 5. *Telephone and Internet Charges*

Petitioner deducted $1,958 and $1,225 for "telephone" and "Internet connection," respectively. He testified that these expenditures were for his personal cell phone (he had only one) and his "home Internet." He supplied almost no substantiation regarding the total amounts of these expenses and no documentation or testimony to establish what (if any) portion was for business, as opposed to personal, use.

In a proper case, business expenses of this sort may be subject to estimate under the *Cohan* rule. But the Court must have some factual basis for its estimate, or the allowance would amount to "unguided largesse." *Williams,* 245 F.2d at 560. Because petitioner has supplied no factual basis on which to predicate an estimate, we will sustain disallowance of these deductions.

### 6. *Dry Cleaning*

Petitioner deducted $1,521 for dry cleaning of the suits, shirts, and ties he wore to work. He submitted no evidence to support this deduction. We grant that the manager of an automobile dealership must make a good impression on customers. But it is well established that the costs of purchasing and maintaining ordinary street attire are not deductible merely because those clothes are worn to the office. *Popov v. Commissioner*, 246 F.3d 1190, 1192 n.2 (9th Cir. 2001), *aff'g in part, rev'g in part and remanding* T.C. Memo. 1998-374; *Pevsner v. Commissioner*, 628 F.2d 467, 469–71 (5th Cir. 1980), *rev'g* T.C. Memo. 1979-311.

The result may be different for uniforms required as a condition of employment. *See Yeomans v. Commissioner*, 30 T.C. 757, 767 (1958). But petitioner does not contend that those circumstances apply here. We accordingly sustain disallowance of this deduction.

## D. *Accuracy-Related Penalty*

The Code imposes a 20% penalty upon the portion of any underpayment that is attributable to (among other things) a "substantial understatement of income tax." § 6662(a) and (b)(2). Section 6662(d)(2)(A) generally defines the term "understatement" as the excess of the tax required to be shown on the return over the amount shown on the return as filed. An understatement of income tax is "substantial" if it exceeds

**[\*10]** the greater of \$5,000 or 10% of the tax required to be shown on the return. *See* § 6662(d)(1)(A). In 2017 petitioner reported tax of \$43,977, but his correct tax—as determined in the notice of deficiency, the adjustments in which we have sustained—is \$72,851. There was thus a substantial understatement of income tax.

Under section 7491(c) the Commissioner bears the burden of production with respect to the liability of an individual for any penalty. *See Higbee v. Commissioner*, 116 T.C. 438, 446 (2001). Respondent has carried that burden here by showing that petitioner claimed Schedule C deductions to which he was not entitled and that the substantial understatement referenced above is attributable to those erroneous deductions.

The Commissioner must also show compliance with the procedural requirements of section 6751(b)(1). *See* § 7491(c); *Graev v. Commissioner*, 149 T.C. 485, 493 (2017), *supplementing and overruling in part* 147 T.C. 460 (2016). Section 6751(b)(1) provides that no penalty shall be assessed unless "the initial determination" of the assessment was "personally approved (in writing) by the immediate supervisor of the individual making such determination."[3]

Respondent established that Robert Morse, the immediate supervisor of RA Ramos, supplied digital approval for assertion of the substantial understatement penalty on November 15, 2019, three days before CEAS mailed the Letter 525–T notifying petitioner of the proposed adjustments. *See Clay v. Commissioner*, 152 T.C. 223, 249 (2019) (requiring that approval be secured before penalty adjustment is first formally communicated to taxpayer), *aff'd*, 990 F.3d 1296 (11th Cir. 2021).

---

[3] The supervisory approval requirement does not apply to "any other penalty automatically calculated through electronic means." § 6751(b)(2)(B). We have held that a substantial understatement penalty automatically calculated by the CEAS software program qualifies for this exception. *Walquist v. Commissioner*, 152 T.C. 61 (2019). But this conclusion follows only if the penalty is "determined by an IRS computer program without human input or review." *Id.* at 73. Although the substantial understatement penalty in this case was calculated initially by the CEAS program, petitioner contacted the IRS to challenge the adjustments proposed in the Letter 525-T. *See supra* p. 3. In 2018 the IRS amended the Internal Revenue Manual (IRM) to clarify that supervisory approval is required when "the taxpayer submits a response, written or otherwise, that challenges the penalty, or the amount of tax to which the penalty is attributable." IRM 4.19.13.6.2(5) (Feb. 9, 2018), *quoted in Walquist*, 152 T.C. at 70–71. This appears to be why Mr. Morse, RA Ramos's immediate supervisor, approved the penalty for a second time on March 10, 2020, following petitioner's communication about the proposed adjustments.

**[\*11]** Mr. Morse approved assertion of the penalty a second time on March 10, 2020, ten months before the notice of deficiency was issued. Respondent has thus demonstrated timely supervisory approval.[4]

No penalty is imposed under section 6662 with respect to any portion of an underpayment "if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to [it]." § 6664(c)(1). "The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Treas. Reg. § 1.6664-4(b)(1). Generally, "the most important factor is the extent of the taxpayer's effort to assess [his] proper tax liability." *Ibid.* Circumstances that may indicate reasonable cause and good faith include "an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." *Ibid.*

Petitioner has devoted his career to the car business and has no knowledge of tax law. His 2017 return was prepared by a professional return preparer. Although that return erroneously claimed deductions on Schedule C, rather than on Schedule A as miscellaneous itemized deductions subject to the 2%-of-AGI floor, we do not believe this error was chargeable to petitioner.

For most of the deductions at issue, petitioner had some substantiation of the amounts incurred but no contemporaneous (or other) records to establish their business purpose. For the vehicle expenses, petitioner admitted that he "didn't do a good job of logging" his travel but "just averaged things out basically, in a lump sum." We find that essentially the same was true for the meals and entertainment, telephone and

---

[4] The U.S. Court of Appeals for the Ninth Circuit has held that, for an assessable penalty, supervisory approval is timely if secured before the penalty is assessed or (if earlier) "before the relevant supervisor loses discretion whether to approve the penalty assessment." *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066, 1074 (9th Cir. 2022), *rev'g and remanding* 154 T.C. 68 (2020); *see also Kroner v. Commissioner*, 48 F.4th 1272, 1276 (11th Cir. 2022) (holding in a deficiency case that approval would be timely if secured before assessment of the deficiency), *rev'g* T.C. Memo. 2020-73. Because Mr. Morse approved assertion of the penalty before the Letter 525–T was mailed, he necessarily granted approval before the penalty was assessed. *See Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th at 1074; *Kroner v. Commissioner*, 48 F.4th at 1276. Under the standards employed by the Ninth and Eleventh Circuits, therefore, Mr. Morse's approval was timely.

**[\*12]** internet expenses, and client gifts. And we do not think petitioner really believed that he could deduct his dry cleaning costs.

We reach the opposite conclusion regarding the hotel expenses in Santa Monica. Petitioner had comprehensive and accurate documentation for these expenditures. His trial testimony convinced us of his belief that he could not successfully discharge his duties as manager of the Honda dealership if he spent three to four hours every day commuting from Irvine. He understood that he could not deduct commuting expenses. But we think he genuinely believed that his lodging expenses were different and had a logical business nexus, enabling him to work the 60 hours per week required to hold on to his managerial job. We accordingly conclude that petitioner is not subject to penalty on the portion of the underpayment attributable to disallowance of his $40,174 lodging expense deduction.

To reflect the foregoing,

*Decision will be entered under Rule 155.*